[Crim. No. 40607. Second Dist., Div. Four. Apr. 2, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWIN COE BERGMAN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*This opinion is certified for publication, other than Contentions, Further Facts, and Issues I through VIII.

**COUNSEL**

Albert C. S. Ramsey, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, William R. Weisman and Frederick Grab, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

## AMERIAN, J.—

### Statement of the Case

Following his conviction of second degree murder (Pen. Code, § 187),[1] rape (§ 261, subds. (2) and (3)), forced oral copulation, (§ 288a, subd. (c)) and kidnaping (§ 207), Edwin Coe Bergman appeals from a judgment entered June 10, 1981.

The court sentenced appellant to state prison on the kidnaping count for an upper term of seven years enhanced by two years for use of a firearm. Upper terms of eight years each for the rape and oral copulation counts were imposed, to run consecutive to the sentence on the kidnaping count. The rape and the oral copulation sentences were each enhanced three years for use of a firearm. An indeterminate 15-year-to-life sentence for second degree murder was imposed and ordered to run consecutive to the sentences for kidnaping, rape and oral copulation. This sentence was enhanced by eight months—one-third the enhancement term for firearm use.

Appellant seeks reversal of the murder and kidnap convictions and seeks modification of the sentences imposed for the rape and forced oral copulation convictions.

On December 18, 1980, a six-count information was filed. Count I charged appellant with the murder of Tony Bass and alleged that the murder was committed during the course of a robbery. Count II charged appellant with the robbery of Tony Bass (§ 211).[2] In counts III and IV appellant was charged, respectively, with rape and forced oral copulation of Vicki Bardwell. Appellant was also charged with kidnaping Ms. Bardwell (count V) and with burglary of her residence (count VI, § 459.) As to all counts, except count VI, it was alleged that appellant used a hand gun. (§§ 12022.5, 1203.06, subd. (a)(1).) The information also alleged a prior felony conviction on March 29, 1971, and that appellant had not remained free of a felony conviction for a period of five years within the meaning of section 667.5, subdivision (b).

Prior to trial, appellant moved, pursuant to section 995, to dismiss both the special circumstance allegation contained in count I and the burglary charge contained in count VI. On March 13, 1981, the court granted the

---

[1]All references are to the Penal Code, unless otherwise indicated.

[2]The jury found appellant not guilty of robbery.

motion as to count VI, dismissing that count, but denied the motion to dismiss the special circumstance allegation in count I.

Also prior to trial, hearings were conducted on motions made by appellant pursuant to section 1538.5 and Evidence Code section 402. Under Evidence Code section 402, appellant sought to exclude statements both oral and demonstrative made by him to police after his arrest for the murder of Tony Bass on grounds that his statements and conduct were elicited through promises that he would receive reasonable bail recommendations and have impounded monies returned to him. Pursuant to section 1538.5, appellant sought to suppress evidence seized without a search warrant from an impounded car and from his hotel room in Las Vegas, Nevada, on grounds that the Las Vegas police officers lacked probable cause to arrest him. The evidence was seized after his arrest. The court denied both motions.

CONTENTIONS*

. . . . . . . . . . . . . . . . . . . . . . .

FACTS

A review of the lengthy record before us shows the following to be the essential facts which support the convictions from which appellant appeals:

Tony Bass (Bass) was a drug dealer. Appellant and Bass were friends and appellant bought drugs, including cocaine, from Bass.

*June 8, 1980*

On June 8, 1980, appellant hosted a barbecue and swim party at his home in Long Beach. The people present at his party included Bass, Vicki Bardwell, who lived with Bass, John Johnston (appellant's cousin) and Betty Stasik, who lived with appellant. After about three hours, Bass and Ms. Bardwell left the party. Appellant agreed to meet Bass later in the evening for purposes of accompanying Bass on a cocaine deal.

At about 9 p.m., appellant called Bass, who informed appellant that he had not tested the cocaine yet and that he wanted appellant to accompany him on the deal. Appellant then left his home and borrowed Ms. Stasik's van. Appellant arrived at the Bass-Bardwell apartment at about 10 p.m. Appellant and Bass then left together. That was the last time Ms. Bardwell

*See footnote, *ante,* page 30.

saw Bass alive. When Bass left he was wearing, among other things, a blue baseball cap inscribed with the words "Lake Havasu Resort."

After the men left the apartment, Ms. Bardwell fell asleep in the bedroom. Approximately two hours later Ms. Bardwell was awakened by appellant who was knocking at her front door. Ms. Bardwell let appellant in and asked where Bass was. Appellant told her that Bass was arrested after Bass came out of a house with an ounce of cocaine that Bass had purchased from someone inside the house. Appellant then told Ms. Bardwell that the police were probably going to raid the apartment so it was important that the two of them get rid of all the drugs Bass kept in the apartment. Appellant then began a search of the apartment and found under the bar a shoe box in which some marijuana was stored. Appellant inquired about the safe Bass kept in the bedroom closet. Ms. Bardwell told appellant that a key and combination were necessary to open it and that she had neither. Appellant unsuccessfully searched dresser drawers in the bedroom in order to locate the key and combination to the safe.

Appellant then suggested that Ms. Bardwell leave the apartment to avoid being arrested herself and that she should stay at his home with him and Ms. Stasik. Appellant told Ms. Bardwell to call Ms. Stasik for a ride to appellant's home. While Ms. Bardwell was preparing to call Ms. Stasik, appellant pulled out an automatic handgun from his waist and ordered Ms. Bardwell to put the phone down. At gunpoint, appellant ordered Ms. Bardwell to orally copulate him. Appellant then ordered Ms. Bardwell, at gunpoint, to lie down and he had intercourse with her.

FURTHER FACTS*

. . . . . . . . . . . . . . . . . . . . . . . .

DISCUSSION

I.-VIII.*

. . . . . . . . . . . . . . . . . . . . . . . .

IX. ■ *Did the trial court err in imposing a separate term for gun use enhancement on each of the sentences imposed for appellant's sex offense convictions? No.*

■ ■ ■ The precise question raised here, whether each sentence for a sex offense conviction may be separately enhanced, pursuant to section

_____

*See footnote, *ante,* page 30.
*See footnote, *ante,* page 30.

12022.5, where the sex offenses occurred on a single occasion with a single victim, has never been directly raised or answered before.[11]

Appellant essentially urges that the holding in *In re Culbreth* (1976) 17 Cal.3d 330 [130 Cal.Rptr. 719, 551 P.2d 23], is controlling and that only one gun use enhancement should have been imposed. *Culbreth* holds that where the "charged offenses are incident to one objective and effectively comprise an indivisible transaction, then section 12022.5 may be invoked only once and not in accordance with the number of victims." (At pp. 333-334.) The *Culbreth* holding was based, in part, upon the rationale that section 654, which prohibits multiple sentences based upon a single criminal transaction, also prevents judgments containing more than a single gun use enhancement under section 12022.5.

The relevant section pertaining to enhancements of sentences imposed for various sex offense convictions is section 1170.1, subdivision (i). Subdivision (i) of section 1170.1 provides: "For any violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or sodomy or oral copulation by force, violence, duress, menace or threat of great bodily harm as provided in Section 286 or 288a, the number of enhancements which may be imposed shall not be limited, regardless of whether such enhancements are pursuant to this or some other section of law. *Each of such enhancements shall be a full and separately served enhancement and shall not be merged with any term or with any other enhancement.*"[12] (Italics added.)

In our view, the language of section 1170.1, subdivision (i) specifically permits imposition of separate gun use enhancements to the sentences imposed for sex offense convictions. We hold that in enacting subdivision (i), the Legislature created an exception to or exclusion from the single-occasion rule promulgated in *In re Culbreth, supra,* 17 Cal.3d 330.

Support for this interpretation of subdivision (i) of section 1170.1 is found in *People* v. *Edwards* (1981) 117 Cal.App.3d 436 [172 Cal.Rptr. 652], and

---

[11]With respect to sex offenses occurring over a short span of time involving a single victim, however, both case law and statute establish that separate sentences for conviction of those crimes may be imposed. (See, e.g., *People* v. *Perez,* (1979) 23 Cal.3d 545, 552-554 [153 Cal.Rptr. 40, 591 P.2d 63]; § 667.6, subd. (c).)

Concerning the propriety of separate section 12022.5 enhancements for sex offenses involving two victims, where the offenses occurred at the same place and within one-half hour of each other, see *People* v. *Calhoun* (1983) 141 Cal.App.3d 117, 126-127 [190 Cal.Rptr. 115].

[12]Subdivision (i) of section 1170.1 was formerly designated subdivision (h). This change in designation resulted from legislative amendment brought about by the addition of a new subdivision (b), with redesignation of former subdivisions (b) through (h) as subdivisions (c) through (i). (Stats. 1982, ch. 1515, § 1.)

*People* v. *Cardenas* (1982) 31 Cal.3d 897 [184 Cal.Rptr. 165, 647 P.2d 569]. In *People* v. *Edwards, supra,* the defendant, convicted of six counts of robbery, contended that the trial court erroneously imposed consecutive gun use enhancements based upon the claim that the single-occasion rule promulgated by *In re Culbreth, supra,* 17 Cal.3d 330, barred multiple enhancements. In discussing this claim, the Court of Appeal considered the question whether, with the advent of the determinate sentencing laws (DSL), *Culbreth* retained vitality.

The court observed that, "[w]hen the Legislature last amended Penal Code sections 1170 and 1170.1 and 12022.5, it did not address itself to the *Culbreth* issue. Hence, none of the statutory changes pertaining to the DSL, with the possibility of one exception, mentioned any intent to abolish the single-occasion rule as promulgated in *People* v. *Culbreth, supra,* and in *People* v. *Chavez* (1980) 26 Cal.3d 334 [161 Cal.Rptr. 762, 605 P.2d 401]. Furthermore, a long-held rule of statutory construction is that 'it is not to be presumed that the legislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication.' [Citations.] [¶] The one exception mentioned above is subdivision (h) of Penal Code section 1170.1 . . . . [¶] By adding subdivision (h) to Penal Code section 1170.1, it is clear that the Legislature intended that in regards to the specific offenses listed in subdivision (h), the number of enhancements which could be imposed could not be limited. This appears to be the only area in the DSL whereby the Legislature expressly determined or by necessary implication abrogated the single-occasion rule set forth in *Culbreth*. [¶] By applying the familiar maxim *expressio unius est exclusio alterius* we find that the legislative intent, with the exception of Penal Code section 1170.1, subdivision (h), was to leave unaltered the applicability of *Culbreth* to other offenses where additional punishment is proscribed for such offenses in which a firearm is used." (*People* v. *Edwards, supra,* 117 Cal.App.3d 436, 447-448.)

The above analysis from *People* v. *Edwards, supra,* was cited with approval by the Supreme Court in *People* v. *Cardenas, supra,* 31 Cal.3d 897 [184 Cal.Rptr. 165, 647 P.2d 569]. One of the issues raised in *Cardenas* was the precise issue raised in *Edwards,* i.e., whether, with the advent of the DSL, the *Culbreth* rule had retained vitality. The Supreme Court adopted the *Edwards* holding that the "*Culbreth* rule remained valid despite the statutory changes resulting from enactment of the determinate sentencing law." (*People* v. *Cardenas, supra,* 31 Cal.3d 897, 914.)

Significantly, the Supreme Court also noted that one possible exception to the *Culbreth* rule is created by subdivision (h) (now redesignated subd.

(i)) of section 1170.1. (*People* v. *Cardenas, supra,* 31 Cal.3d at p. 913, fn. 9.)

Neither *Edwards* nor *Cardenas* is dispositive of the question whether subdivision (i) of section 1170.1, in fact, creates an exception to the *Culbreth* rule. Those decisions, nevertheless, do support an interpretation that subdivision (i), by necessary implication, permits adding a separate enhancement to the sentence imposed for each listed sex offense conviction even though the sex offenses were perpetrated one after the other upon the same victim. Accordingly, we conclude that, in the present case, the trial court properly added a separate term for gun use enhancement to the sentence for appellant's convictions of rape and of forced oral copulation.

X. ■ *Did the trial court err in imposing three-year enhancements for firearm use in sex offense convictions, where the information alleged enhancements under section 12022.5 and the jury verdict found as true enhancements under section 12022.5?* Yes.

In the present case there is an issue concerning sentencing which has not been raised by appellant, but which was argued in letter briefs submitted after oral argument. The minute order reflects that the enhancements to the terms imposed upon each of appellant's sex offense convictions were added pursuant to section 12022.5.

Section 12022.5 provides, in part, "Any person who personally uses a firearm in the commission or attempted commission of a felony shall, upon conviction of such felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of imprisonment in the state prison for *two years.*" (Italics added.) Here, however, appellant received separate enhancements for use of a firearm in the commission of rape (§ 261) and forced oral copulation (§ 288a) and the term imposed for each enhancement was *three years.*

Section 12022.3 provides, in part, "For each violation of Section 261; 264.1, 286, 288, 288a or 289, and in addition to the sentence provided, any person shall receive an enhancement (a) of three years if such person uses a firearm or any other deadly weapon in the commission of such violation . . . ." With respect to the rape and oral copulation charges (counts III and IV), the information alleged use of a firearm pursuant to section 12022.5[13]

---

[13]The language used in the information was, "It is further alleged that in the commission and attempted commission of the above offense [appellant] personally used a firearm, to wit, a handgun, within the meaning of Penal Code Sections 12022.5 and 1203.06(a)(1)."

Also, verdict forms submitted to the jury concerning the use allegation contained in those counts indicate that the jury was required to determine whether appellant used a firearm within the meaning of section 12022.5.

Section 1170.1, subdivision (f), provides, in part, that "The enhancements provided in Sections . . . 12022.3 [and] 12022.5 shall be pleaded and proven as provided by law." The Attorney General urges that the pleading requirements of section 1170.1, subdivision (f), were satisfied by the words of the use allegations of the information, that the charging language in sections 12022.3 and 12022.5 is similar and that the actual numerical designation of the enhancements sought for the use allegations, therefore, should be disregarded as "mere surplusage." The Attorney General relies solely upon *People* v. *Deas* (1972) 27 Cal.App.3d 860 [104 Cal.Rptr. 250], for the proposition that where the language used to plead a use allegation is adequate, there is no requirement that the numerical designation of the enhancement to be sought be pled as well. In our view, that case is not dispositive because that decision is factually distinguishable from the case before us.

In *People* v. *Deas, supra,* 27 Cal.App.3d 860, the information charged defendant with two counts of robbery and "alleged that defendant was armed with a deadly weapon at the time of each offense and that he had used that weapon at the time of commission of each offense." (At p. 861.) After a jury trial, defendant was convicted of robbery on both counts and the jury found the armed allegations to be true as to only one of those counts. As to that count, the court added an enhancement under section 12022.5 to the sentence imposed for that count. On appeal, defendant urged that the enhancement was improper because section 12022.5 was not mentioned in the information. The court rejected this contention stating, "We know of no law that requires a criminal pleading to cite the code section applicable to facts properly pleaded." (At p. 863.)

In this case, the numerical designation of section 12022.5 cannot be deemed superfluous. Absent any reference whatever to code sections, the language of the use allegations of the information in this case might have given appellant sufficient notice that additional sentences could be imposed either pursuant to section 12022.3 or section 12022.5. This, however, we are not called upon to decide. The effect of designating section 12022.5 in the information and using the charging language which was employed, was to give appellant notice that additional two-year enhancements would be sought under that section. He was given no notice up to the time of sentence that any three-year enhancement was sought.

In *People* v. *Najera* (1972) 8 Cal.3d 504 [105 Cal.Rptr. 345, 503 P.2d 1353], the defendant was charged with robbery and the information alleged

that he was " 'armed with a deadly weapon—to wit, a gun.' " (*Id.* at p. 506.) The jury found defendant guilty of robbery and found that he was armed at the time the robbery occurred (§ 12022.2). The jury was not instructed to determine whether defendant "used" the firearm within the meaning of section 12022.5. At sentencing, an enhancement pursuant to section 12022.5 was imposed. One of the questions before the Supreme Court was "whether or not, by reason of the People's failure to request jury instructions covering [section 12022.5], the People should be deemed to have waived the application of that section." (At p. 509.) The court held that failure to request a jury instruction concerning section 12022.5 constituted waiver of application of that section. In reaching that holding, the court noted that "[a]lthough defendant has raised no objection to the adequacy of the information . . . it is clearly the better practice, in terms of giving defendant fair notice of the charges against him, to set forth in the information whether or not application of section 12022 or 12022.5 will be sought." (At p. 509, fn. 4.)

We conclude that appellant did not here receive fair notice that the prosecution would seek against him application of section 12022.3.

### DISPOSITION

The sentence as to enhancements on counts III and IV is ordered modified to two-year enhancements as to each count. As so modified, the judgment is affirmed.

Woods, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied April 19, 1984, and appellant's petition for a hearing by the Supreme Court was denied June 13, 1984.