[Crim. No. 15569. Fourth Dist., Div. One. July 5, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES RUSSELL BISHOP, Defendant and Appellant.

374

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Jeffrey J. Stuetz, Deputy State Public Defender, and Lawrence Martin Cohn for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John W. Carney and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**STANIFORTH, J.**—Pursuant to a plea bargain defendant James Russel Bishop pleaded guilty to committing the following crimes against Lena S.: attempted murder resulting in great bodily harm (Pen. Code,[1] §§ 664/187/

---

[1] All statutory references are to the Penal Code unless otherwise specified.

12022.7); rape with use of a firearm (§§ 261, subd. (2), 12022.3, subd. (a)); two acts of forcible oral copulation, one of which involved the infliction of great bodily injury (§§ 288a, subd. (c)/12022.8). Against the victim Sanae T., he pleaded to attempted murder resulting in great bodily injury, rape, rape with the use of a firearm, two acts of forcible copulation, one resulting in great bodily injury. By the terms of the plea bargain, the remaining charges (two counts of kidnaping, two additional counts of rape) were dismissed.

The attempted murder of Sanae T. (count 12) was agreed to be deemed the base term; count 7, attempted murder of Lena S., was to be either a concurrent sentence or stayed as to count 12. As to the sex related offenses it was stipulated the sentencing court could use the great bodily injury finding (12022.8) only as to count 4, the forcible oral copulation of Lena S. Any other section 12022.8 enhancement was to be stayed as to count 9, the forcible oral copulation of Sanae T. The maximum prison sentence Bishop could receive under the bargain was 79 years.

Bishop was sentenced to a total term of 79 years computed as follows: "9-year upper term for Count 12 (attempted murder of Sanae T.), plus a 3-year great bodily injury enhancement; 8-year upper term for Count 8 (forcible oral copulation of Sanae T.); 8-year upper term for Count 3 (forcible oral copulation of Lena S.); 8-year upper term for Count 10 (rape of Sanae T.), plus a 3-year gun use enhancement; 8-year upper term for Count 9 (forcible oral copulation of Sanae T.); 8-year upper term for Count 4 (forcible oral copulation of Lena S.), plus a 5-year great bodily injury enhancement; 8-year upper term for Count 6 (rape of Lena S.), plus a 3-year gun use enhancement."

A 12-year sentence on count 7, attempted murder of Lena S. with great bodily injury enhancement, was also imposed but ordered to run concurrent with count 12, attempted murder 12-year term imposed with enhancement as to Lena S. Bishop appeals, urging sentencing errors.

## FACTS

The facts recited are taken from the prosecutor's statement in aggravation and the probation report. At 4:30 p.m. on February 21, 1983, Bishop kidnaped at gunpoint two teenage girls, Lena S., a 15-year-old Californian of Japanese descent and Sanae T., a 17-year-old foreign exchange student from Japan. Bishop blindfolded the girls, using trash bags, and drove them by pick-up to a secluded San Diego beach where he tied them up. He fondled Lena S.' breasts and forced her to hold and squeeze his penis. He then forced Sanae T. (while still blindfolded) to orally copulate him. While so

engaged, Bishop ordered Lena to remove her clothing. He then forced Lena to orally copulate him. He then attempted to rape her. After failing to penetrate Lena, he returned to Sanae T. and raped her. Bishop then ordered both girls to dress, tied their hands together and tied each girl to the other. He told them not to move because he would be watching them. He then departed the area.

Sometime later he returned, tightened the blindfolds but removed the rope from Sanae's neck. He then forced Sanae to orally copulate him and then forced Lena to orally copulate him. He ordered Lena to disrobe and then raped Sanae. He then returned to Lena and raped her and then returned to Sanae and raped Sanae again. Bishop ordered the girls to dress and forced them into the ocean saying they were going to swim. He then shot each girl several times and left them for dead. These brutalized victims miraculously survived.

The angry sentencing judge, after upbraiding the Legislature, the appeal courts and the law, announced he was sentencing under "Ottombrino box theory" (see *People* v. *Ottombrino* (1982) 127 Cal.App.3d 574 [179 Cal.Rptr. 676]) and imposed a 79-year total sentence. We examine to determine whether the trial court followed the law in imposing this sentence.

## I

Bishop contends the sentencing court did not state adequate reasons for imposing the upper term for each of these crimes. The court set forth its reasons in 15 pages of detail. Defendant wants yet more detail. Premeditation readily appears in the court-detailed review of the activities of Bishop: he had been seen earlier in the area with gun and trash bags in the truck; he kidnaped, then transported the victims to a lonely area of a beach in preparation for the orgy of sex and violence to come; the crimes occurred over an extended period of time. Bishop had much time to reflect. He tied up, left the victims; later he returned and resumed his course of misconduct. After these several periods of possible premeditation, he shot each victim several times. Premeditation overflows in the record and into the judge's statement of reasons. (Cal. Rules of Court,[2] rule 421(a)(3).)

The evidence is overwhelming showing each of these victims to be particularly vulnerable. These were young females, teenagers—one was a foreign exchange student, both were of small stature. They were abducted at gunpoint, blindfolded (plastic garbage bags were placed over their heads),

---

[2]All references to rules are to California Rules of Court unless otherwise specified.

kept in a state of subjection and terror. These young females (15 and 17 years of age) were the most vulnerable of victims. (Rule 421(a)(3).)

The judge found the crimes involved a high degree of cruelty and viciousness. To say these crimes do not involve a high degree of cruelty, viciousness and callousness is simply to close one's eyes and ears to the recitation of fact. Bishop put these victims through a long, torturing, horrifying ordeal. Not one iota of humanity appears in Bishop's committing any of these crimes. (Rule 421(a)(1).)

■ What is required by rule 443 is the judge state in simple language the primary factors that support his exercise of discretion. (*People* v. *Enright* (1982) 132 Cal.App.3d 631 [183 Cal.Rptr. 249].)

■ There are more than sufficient facts set forth by the sentencing judge to support the imposition of the upper term as to each of the crimes committed.

## II

■ Bishop next contends the same factors were used to aggravate the sentence as used to impose consecutive sentences. This is not true. The court, after a most explicit analysis, determined section 667.6, subdivision (d), applied here because there were (1) separate victims and (2) separate occasions involved. The several grounds supporting the *maximum* term, aggravated sentence, have been set forth in I above. The basis for the *consecutive* terms, as well as full terms, were the factors set forth in section 667.6, subdivision (d)—separate victims and separate occasions. The sentencing court considered the facts there were two victims and separate criminal acts committed on each of the two victims. This finding is patently independent of the facts showing the victims were vulnerable, the crimes were premeditated and particularly vicious. (*People* v. *Hurley* (1983) 144 Cal.App.3d 706, 709-710 [192 Cal.Rptr. 805].)

## III

■ Did the trial court lawfully impose full consecutive terms for the various sex crimes in accordance with the mandate of section 667.6, subdivision (d)? The probation report (the factual basis for the trial court's findings) indicates Bishop forced the second victim (Sanae T.) to orally copulate him (count 8). He then went to the first victim and forced her to orally copulate him (count 3). Next, he returned to and raped the second victim (count 10). He then left the area and returned at a later time (time lapse unknown) and the victims were again subjected to a new series of

sexual offenses each separated in time and place. First, he compelled Sanae to orally copulate him (count 9), then forced Lena to orally copulate him. He then raped Sanae and then returned to and raped the second victim. Again he went back and raped Sanae one more time. Thus, not only are the first series of offenses separated by Bishop's departure for a time, length unknown, but also the various single sex acts for which consecutive terms were imposed are separated by both time and a substantial event—the commission of a sex crime on another victim.

Section 667.6, subdivision (d), declares full, separate and consecutive terms shall be served for the rape, forcible copulation, where separate victims are involved or the same victim is involved on "separate occasions." Here there are separate occasions authorizing the separate distinct terms. Within each series of sex acts, Bishop alternated between the victims. Thus, each sexual act on one victim occurred on separate occasions, preceded or succeeded by a sexual assault on the other.

Bishop relies upon *People* v. *Fleming* (1983) 140 Cal.App.3d 540, 545 [189 Cal.Rptr. 619] to support his position. *Fleming* is factually distinguishable. There was but a single victim sexually abused repeatedly over a period of hours. The trial court imposed consecutive sentences relying upon section 667.6, subdivision (d), which mandates consecutive sentences for the "same victims" on separate occasions or "separate victims." Subdivision (d) must be contrasted with section 667.6, subdivision (c). The latter permits—upon articulated judicial choice—consecutive sentences for sex offenses committed *"during a single transaction."* Said the court in *Fleming*: "To characterize sexual acts occurring within a few moments or even a few seconds of each other, such as those at the house, as offenses committed on 'separate occasions,' is to rob that term of any meaning." (140 Cal.App.3d at p. 545.) *Fleming* applied this sound rule of statutory interpretation: A court should avoid a construction which renders a part of a statute surplusage; the court reasoned if subdivision (d) applied to acts committed within minutes of each other, there would be no room for the permissive imposition of consecutive sentences under subdivision (c). *Fleming* concluded: "Consequently, . . . some *intervening events* or *passage of time* must occur between the sexual offenses before subdivision (d) is applicable." (*Ibid.*)

The court in *People* v. *Reeder* (1984) 152 Cal.App.3d 900, 915 [200 Cal.Rptr. 479] sought to capture the legislative intent in using the term "episodic detachment" as the equivalent of "separate occasions." There must be "an interruption in the criminal activity of sufficient duration or nature that the end of one sexual episode and the start of another can be ascertained with reasonable certainty." (*Ibid.*, fn. omitted.) *Reeder* reasoned: "[T]he test for consecutive punishment under section 667.6, subdi-

vision (d), is not whether a single transaction is divisible but is rather whether the offenses occurred on occasions disjoined from each other. [Fn. omitted.] The Legislature's use of the phrase 'separate occasions' consequently imposes a requirement of detachment of one episode from another before the mandatory requirements of subdivision (d) become applicable. *By detachment we mean an interruption in the criminal activity of sufficient duration or nature that the end of one sexual episode and the start of another can be ascertained with reasonable certainty.* [Fn. omitted.]

"Just as a drama is divided into separate acts with many scenes, so too is the legislative scenario of mandatory consecutive sentences for multiple violent sex offenses. *It is the separate acts, and not the scenes, of the criminal tragedy that the law seeks to isolate and punish more harshly.*" (*Id.,* at pp. 915-916, italics added.)

*People* v. *Calhoun* (1983) 141 Cal.App.3d 117 [190 Cal.Rptr. 115] is the only case factually similar to the instant case. Multiple and successive alternate raping of two victims took place. While section 667.6, subdivision (d), was not the critical focus of attention, the court nevertheless analyzed the "separate transactions" concept. The length of time varied between the various sex acts. The court there found these facts showed the separate acts of rapes of these two women were "separated by some time and thought on defendant's part," therefore warranted the imposition of separate consecutive aggravated sentences. (*Id.,* at p. 126.)

The sentencing court here made specific factual findings of separate victims, separate acts, i.e., "episodic detachment" as a basis for section 667.6, subdivision (d), sentencing. There is substantial evidence in this record which supports the court's conclusions and requires affirmance of its finding.[3] (*People* v. *Lee* (1980) 110 Cal.App.3d 774, 786 [168 Cal.Rptr. 231].)

Finally, if more is needed to support the trial court's imposition of full consecutive sentences, then it appears the trial court, out of caution, alternatively sentenced under section 667.6, subdivision (c). The court specified its reasons for this choice. It articulated a factual basis and exercised discretion as authorized by section 667.6, subdivision (c), in the imposition of "full term consecutive sentences." This doubly reinforced sentencing technique requires no remand for resentence.

---

[3]When the sexual assault on the one victim ended, a sexual assault on the other victim began, the assaults on the first victim were interrupted, separated, both by time and place. There was a clear cessation between the sexual acts on the one victim. There was an event of sufficient duration and nature intervening between the end of one episode and the beginning of another to be reasonably ascertainable. Some "intervening event" took place between the sexual assaults committed against the same victim.

*People* v. *Smith* (1984) 155 Cal.App.3d 539 [202 Cal.Rptr. 259] approved this alternate sentencing technique, stating: "We do suggest that once a sentencing court determines that full consecutive term sentencing is required by subdivision (d) of section 667.6 it should say so and should then also state whether it would impose the same sentencing under the discretionary provisions of subdivision (c) and, if so, why." (*Id.* at p. 545.)

## IV

■ Bishop complains the court's statement of reasons for imposing full consecutive sentences under section 667.6, subdivision (c), was simply a restatement of the earlier statement of reasons for consecutive sentence generally. Albeit true, this was not error. While the court chose to sentence under both subdivisions (c) and (d) of section 667.6, nothing in rule 441 proscribes the use of the same reasons to impose full consecutive sentences under the permissive section 667.6, subdivision (c), as may be used to impose consecutive sentences rather than follow the more lenient sentencing prescribed by section 1170.1.

As was said in *People* v. *Belmontes* (1983) 34 Cal.3d 335 [193 Cal.Rptr. 882, 667 P.2d 686]: "This does not mean that the reasons justifying full term consecutive sentencing under section 667.6, subdivision (c) must necessarily be different than those used to justify the imposition of consecutive sentences under section 1170.1. The criteria listed in rule 425—which, as noted, incorporate those of rules 421 and 423—apply to both decisions and cover all degrees and nuances of depravity. What is required is an identification of the criteria which justify use of the drastically harsher provisions of section 667.6, subdivision (c)." (*Id.,* at p. 348.) *People* v. *Wilson* (1982) 135 Cal.App.3d 343, 352, footnote 4 [185 Cal.Rptr. 498] said: "While the sentencing judge is required to separately state reasons for utilizing section 667.6, subdivision (c), this does not mean that the reasons must be separate and distinct from those used to justify imposition of consecutive sentences . . . . [¶] This suggested sentencing procedure, which is not exclusive, is not subject to the prohibition against dual use of facts."

In imposing consecutive sentences here the court said the crimes were independent of each other (rule 425(a)(1)); they involved separate acts of violence (rule 425(a)(2)); and involved a pattern of violent conduct (rules 425(b) and 421(b)(1)). The evidence demonstrated a pattern of violent conduct which made Bishop a grave danger to society. After completion of these alternating sexual assaults on the two victims, he shot each of them several times, left them only when he thought them dead. This horrifying portrait of grossly cruel conduct more than justifies the court's choice of consecutive sentences under section 667.6, subdivision (c). Any one of the

factors articulated by the court in support of the consecutive sentences would warrant the result obtained. (*People* v. *Covino* (1980) 100 Cal.App.3d 660 [161 Cal.Rptr. 155].)

## V

■ Bishop next argues he is entitled to remand for resentencing in light of *People* v. *Belmontes, supra,* 34 Cal.3d 335, which authorizes the sentencing court in its discretion to treat sex offenses or a nonsex offense as the "principal term." (*Id.,* at p. 346.) Here, the court was not blessed with discretion to make this particular "*Belmontes* choice." By the express terms of the plea bargain, the attempted murder of Sanae T., count 12, was to be the principal term, and the other nonsex offense, attempted murder of Lena S. (count 7), was to be served concurrently or stayed.

In an attempt to impose this *Belmontes* rule upon the case at bench, Bishop suggests the sentencing court could have decided not to follow the plea bargain. Had the court followed such a procedure, the plea bargain would be required to be vacated. Both the defendant and the prosecution are entitled to the benefits of their bargain. (*People* v. *Orin* (1975) 13 Cal.3d 937, 942, 943 [120 Cal.Rptr. 65, 533 P.2d 193].) *Belmontes* does not require remand in the light of this stipulation and its faithful fulfillment in the trial court's sentence.

Finally, *Belmontes* in footnote 8, 34 Cal.3d at pages 348-349, points out a remand for resentencing may not be required if the record indicates the sentencing court clearly indicated it would not have exercised its discretion to sentence under section 1170.1 even if it had been aware of the fact it had such discretion. Here, the court imposed the consecutive sentences under both section 667.6, subdivisions (d) and (c) (out of an abundance of caution). It would be a reasonable deduction from this record the court would not choose to sentence under section 1170.1 even if authorized.

Finally, *Belmontes'* applicability is doubtful because that case dealt with sentencing under section 667.6, subdivision (c) and does not discuss the mandatory sentencing under subdivision (d) as occurred here.

## VI

■ Finally, Bishop contends the trial court erroneously imposed an enhancement under section 1170.1, subdivision (i). This provision declares that for any violation of various Penal Code provisions relating to certain sex crimes (such as §§ 261 and/or 288), the number of enhancements which may be imposed "shall not be limited, . . . . Each . . . enhancement[] shall

be a full and separately served enhancement and shall not be merged with any term or with any other enhancement." Bishop contends it was error for the court to use section 1170.1, subdivision (i), when it chose section 667.6, subdivisions (c) and (d), as the applicable sentencing law.

Nothing in the language of section 1170.1, subdivision (i), hints it cannot be used to authorize enhancements when the court chooses to sentence under section 667.6.

As was noted in *People* v. *Belmontes, supra,* 34 Cal.3d 335, 345-346), section 667 is not an exclusive means of imposing a sentence, rather the court can employ section 667.6 as well as section 1170.1 in fashioning the appropriate sentence. An analogous result obtained in *People* v. *Calhoun, supra,* 141 Cal.App.3d 117, 126-127, where it was pointed out section 1170.1, subdivision (h), mandates imposition of full, consecutive terms for each enhancement on each enumerated sex crime. The Supreme Court in *People* v. *Cardenas* (1982) 31 Cal.3d 897, 913, footnote 9 [184 Cal.Rptr. 165, 647 P.2d 569] also supports this position, where it stated that section 1170.1, subdivision (h), was the one "possible exception" to the "single occasion rule" of *In re Culbreth* (1976) 17 Cal.3d 330, 333-334 [130 Cal.Rptr. 719, 551 P.2d 23].

The judgment is affirmed in all respects.

Brown (Gerald), P. J., concurred.

**WORK, J.**—I concur in the majority opinion except for sections III and VI in which I concur in the result.

While I concur that the sentencing court could properly impose consecutive sentences for the two separate forcible sex acts committed on Sanae during the initial episode of sexual abuse, and also for the three separate acts committed upon her during the second later episode, it is because the court sentenced them pursuant to section 667, subdivision (c). Further, I agree there is evidentiary support for the implicit finding Bishop's act of leaving the girls after his first series of crimes was sufficient to mandate those completed crimes be sentenced consecutively to those committed after he returned under section 667, subdivision (d). I do not concur in the remaining discussion as holding in section III because, frankly, I disagree with its application to these facts.