[Crim. No. 6846. Fifth Dist. Sept. 20, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
RAFAEL RODRIGUEZ, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

---

†Parts II, III and IV are not published, as they do not meet the standards for publication contained in rule 976(b), California Rules of Court.

**COUNSEL**

Quin Denvir and Frank O. Bell, Jr., State Public Defenders, under appointment by the Court of Appeal, Louis N. Hiken and Harvey Zall, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Roger E. Venturi and Anthony L. Dicce, Deputy Attorneys General, For Plaintiff and Respondent.

## OPINION

ANDREEN, J.—Defendant Rafael Rodriguez appeals from a judgment of conviction of seven counts: assault with a deadly weapon upon a police officer (count I, Pen. Code, § 245, subd. (b)); kidnaping (count II, Pen. Code, § 207); auto taking (count III, Veh. Code, § 10851); forcible rape (count IV, Pen. Code, § 261, subd. (2)); forcible sodomy (count V, Pen. Code, § 286, subd. (c)); forcible oral copulation (count VI, Pen. Code, § 288a, subd. (c)) and robbery (count VII, Pen. Code, § 211). The jury found true a firearm use allegation for each of the above offenses.

Defendant was sentenced to an aggregate term of 44 years.[1]

Defendant argues the court committed prejudicial error in denying his motion to exclude a 13-year-old prior burglary conviction (*People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]); his sentence on auto theft should have been stayed pursuant to Penal Code section 654 because it was incident to the kidnaping offense; and under the authority of *In re Culbreth* (1976) 17 Cal.3d 330 [130 Cal.Rptr. 719, 551 P.2d 23], the court should have imposed only a single Penal Code section 12022.5 enhancement for the sex offenses rather than the three it imposed. (All statutory references are to the Penal Code unless otherwise indicated.)

## I. FACTS

On an April evening in 1981, Officer Craig Wright of the Merced County Sheriff's Department noticed a green Mercury automobile enter Henderson Park in Merced County and stop. The officer approached the car and asked defendant, who had raised the hood, what the problem was; defendant declined an offer of assistance, identified himself as Ralph Rodriguez, and stated he had to be in court in a couple of days for sentencing on a conviction.

Wright requested a warrant check, discovered there were outstanding warrants and told defendant he would have to arrest him and transport him

---

[1] The term was computed as follows: Count II—kidnaping: base term and upper term (seven years) plus two years for the Penal Code section 12022.5 enhancement. The following counts to be served consecutively to count II: count I—assault with a deadly weapon: one-third middle term (one and one-third years) plus enhancement of two-thirds year; count III: auto taking—one-third middle term (two-thirds year)—two-thirds year enhancements; count VII: robbery—one-third middle term (one year) plus two-thirds year enhancement. The trial court imposed full consecutive terms for each of counts IV, V and VI, utilizing the aggravated term of eight years for each of the offenses, plus two-year enhancements for use of a firearm pursuant to Penal Code section 12022.5 on each offense, totaling a thirty-year sentence for the sex offenses.

to jail. As the officer leaned into his patrol car to replace the radio microphone, defendant lunged toward him and grabbed the officer's pistol. The officer struck defendant twice in the face, but defendant obtained the service revolver.

While pointing the weapon at the officer, defendant stated something to the effect that he was going " 'to blow [the officer's] fuckin' brains out.' " Wright turned to run and heard the weapon discharge; he felt the physical sensation of heat, a high-pitched hum, and the hair rise on the side of his head, suggesting that a bullet passed by his head. Wright continued running and hid behind a tree.

Defendant shot out a tire of the police car, returned to his vehicle which contained two other occupants, and drove away. The vehicle made a U-turn and drove back toward the officer at a high rate of speed; an individual was leaning out the window of the car with the gun in his hand. Wright could not remove his shotgun from the patrol unit because of the locking mechanism. Wright was unable to follow the vehicle because of the flat tire.

Defendant immediately dropped off his nephew Don Shelton at the side of a road. Defendant told him to "get out of the car because he didn't want [his nephew] to get in trouble . . . ."

Defendant abandoned the vehicle near the rural residence of Robert and Aleta B. Aleta B. (Aleta) and her one and one-half-year-old son were home alone. Aleta heard a "hard" knocking on the door which she partially opened; defendant pointed a gun at her and pushed his way through, hysterically yelling "how he had just shot a cop at the park" and that he would kill her also because he had "nothing to lose."

Defendant ordered Aleta to get her purse and leave the house with him; she was to drive the family's Jeep truck; the child was to remain at home. Once outside, defendant called to "Maria," who was behind a tree in the front yard. The trio got into the truck and defendant ordered Aleta at gunpoint to drive where he instructed. At one point, Aleta was allowed to call her mother-in-law, Shirley B. (Shirley), from a phone booth for help with the sleeping child. Shirley went to her son's home, called her husband, and reported Aleta's disappearance to the police.

Defendant directed Aleta to drive into a trailer court where he pulled Maria out of the car, shook her around and then told her to find her way home. Defendant and Aleta went to the south Merced area and stopped at the home of Timothy Ramos. Defendant told Aleta she was to wait for him

in the bathroom and pretend to be his girlfriend while he obtained some marijuana from Ramos.

They left the house after defendant acquired the marijuana; defendant ordered Aleta to drive the truck and stop next to a ditch bank near an open field. Defendant made sexual advances toward Aleta, eventually forcing her to have sexual intercourse with him. After he sodomized and orally copulated her, he gave her a portion of her clothing and directed her to drive the truck.

When they reached a rural area approximately one-quarter mile from a house, defendant ordered her to stop the truck. Before letting her go, defendant took $80 in cash from her purse. Aleta ran to the house and called the sheriff's office. She recounted to an officer that defendant on one instance referred to himself as "Ralph."[2]

Later that evening, at the Merced Community Hospital, Aleta was given a sexual assault examination by a physician. A vaginal specimen proved positive for the presence of sperm.

Two days later, Aleta identified defendant in a photographic lineup as her assailant. Seven months later, the truck was located in Shreveport, Louisiana. Defendant was apprehended in Louisiana and ordered extradited to California.

### Defense

Timothy Ramos testified for defendant and stated he recalled the evening when Aleta and defendant were at his residence, but that he did not see defendant with a gun. Ramos testified defendant and Aleta stayed a few minutes for defendant to obtain some marijuana and left. Defendant's mother, Shirley Kelley, testified that several years ago, defendant was a good shot. Defendant did not testify.

## II. DEFENDANT'S BEAGLE MOTION*

. . . . . . . . . . . . . . . . . . . . . .

## V. FIREARM USE ENHANCEMENTS

After imposing full consecutive aggravated sentences for the three sex crimes pursuant to section 667.6, subdivision (c), the court added con-

---

[2]Defendant's nephew Shelton referred to defendant as his "Uncle Ralph" during his testimony at trial.

*See footnote, *ante,* page 207.

secutive two-year weapon use enhancements under section 12022.5 as to each. We must examine whether the imposition of the three separate weapon use enhancements[6] was permissible under *In re Culbreth, supra,* 17 Cal.3d 330, where the Supreme Court held that if "all the charged offenses are incident to one objective and effectively comprise an indivisible transaction, then section 12022.5 may be invoked only once. . . ." (*Id.,* at p. 333; *People* v. *Cardenas* (1982) 31 Cal.3d 897, 913 [184 Cal.Rptr. 165, 647 P.2d 569].)

The Attorney General argues that the *Culbreth* "single-occasion rule" has been abrogated by the enactment of section 1170.1, subdivision (i).[7] It provides: "For any violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or sodomy or oral copulation by force, violence, duress, menace or threat of great bodily harm as provided in Section 286 or 288a, the *number of enhancements which may be imposed shall not be limited,* regardless of whether such enhancements are pursuant to this or some other section of law. *Each of such enhancements shall be a full and separately served enhancement and shall not be merged with any term or with any other enhancement.*" (Italics added.)

A careful reading of the applicable Penal Code provisions leads to the conclusion that when multiple sex offenses are punished pursuant to section 667.6, subdivision (c), the provisions of section 1170.1, subdivision (i) do not apply. This conclusion is reenforced by a review of available legislative history and is supported by case law.

We start with an analysis of the Penal Code. The trial court utilized section 667.6, subdivision (c) to impose full force consecutive terms. That statute commences: "*In lieu of the term provided in Section 1170.1,* a full, separate, and consecutive term may be imposed for each violation of . . . ." (Italics added.) "The entire content of that provision points towards its being a separate and alternative sentencing scheme for offenses that fall within its ambit." (*People* v. *Belmontes* (1983) 34 Cal.3d 335, 345-346 [193 Cal.Rptr. 882, 667 P.2d 686].) It follows that once the court adopts the section 667.6, subdivision (c) scheme, the provisions of section 1170.1 simply do not apply. This includes subdivision (i) of that section.

One may argue that the Legislature used the word "term" in section 667.6, subdivision (c) to mean only the lower, middle or upper "term" (the

---

[6]Defendant does not contend that the enhancements as to the kidnaping, car taking and robbery were improper.

[7]Former section 1170.1, subdivision (h), has been renumbered without substantive change and is now contained in section 1170.1, subdivision (i). We will refer to it by its present designation. (Compare Stats. 1980, ch. 132, § 2, p. 307 with Stats. 1982, ch. 1515, § 1, p. 5878.)

base term) and meant to exclude from its meaning any "enhancement." The difficulty with this argument is that the Legislature has failed to employ precise terminology in the sentencing statutes. See subdivision (d) of section 1170.1 which employs the use of "terms" to cover enhancements under sections 12022.5 and other sections.[8] See also section 12022.5 itself, which uses the word "term" rather than "enhancement." Rule 405(c) of California Rules of Court recognizes this usage and provides: " 'Enhancement' means an additional term of imprisonment added to the base term."

It appears that the Legislature meant to provide multifaceted discretion for the trial courts when sentencing for the type of sexual offenses listed in section 667.6, subdivision (c), that is, multiple sexual crimes against a single victim on the same occasion or where the defendant has committed multiple offenses, one of which is a sex offense listed in the section. (See *People* v. *Howell* (1984) 151 Cal.App.3d 824 [199 Cal.Rptr. 110].) Since the range of terms under section 1170 is either three, six or eight years or five, seven or nine years as to the crimes listed, the Legislature has made a four- to five-year disparity possible among the various available sentences. Also, multiple sentences may be ordered to run concurrently. If the court determines to impose them consecutively, it may use the principal/subordinate scheme in 1170.1 or the harsher full force consecutive terms in section 667.6, subdivision (c). If the decision is to use consecutive sentences under section 1170.1, and enhancements are imposed under subdivision (i) of that section, they are to be full and separately served. This great range of sentencing choices affords the court the opportunity to make the sentence fit the crime and the criminal.

Limits are set, however, and if section 667.6, subdivision (c) is used, the full force consecutive terms were deemed punishment enough and the provisions of section 1170.1, subdivision (i) were not made applicable. Had the Legislature wished to make subdivision (i) apply to a section 667.6, subdivision (c) sentencing, all it would have had to do is commence the section with the words "In lieu of the term provided in section 1170.1, *subdivision (a),* . . ." However, it did not.[9]

The matter is not ambiguous, but if it were, we would be bound to resolve it in the defendant's favor. (See *People* v. *King* (1978) 22 Cal.3d 12, 23

---

[8]Senate Bill No. 13 enacted both section 667.6 and subdivision (i). It used the word "term" in section 667.6, subdivision (c) and used the same word in amending section 1170.1, subdivision (c) which provides for enhancements. (See Stats. 1979, ch. 944, pp. 3258 and 3260-3261.) Subdivision (d) of section 1170.1 was, when Senate Bill No. 13 was enacted, designated subdivision (c).

[9]As noted in footnote 8, *ante,* section 667.6 and subdivision (i) were enacted by the same legislation. This fact makes the omission of a reference to section 1170.1, subdivision (a) more telling.

[148 Cal.Rptr. 409, 582 P.2d 1000]; *People* v. *Davis* (1981) 29 Cal.3d 814, 828 [176 Cal.Rptr. 521, 633 P.2d 186].)

We turn to a review of available legislative history. It appears that the Legislature did not consider the holding in *In re Culbreth, supra,* 17 Cal.3d 330 when it enacted subdivision (i). Instead, its focus, and the reason for enacting the subdivision, was to abrogate the limitations in section 1170.1, subdivisions (a) and (d)[10] in enumerated sex offenses. Section 1170.1, subdivision (d) and *Culbreth* proscribed multiple enhancements, but in different circumstances. Subdivision (a) limited an enhancement used in a consecutive term to one-third the term.

As noted earlier, *Culbreth* holds that when there is a single course of conduct resulting in multiple victims, the use enhancement in section 12022.5 may be invoked only once and not in accordance with the number of victims. That is, the multiplicity of sentences because of the multiplicity of victims does not engender multiplicity of weapon use. The rule applies to multiple offenses committed against a single victim. (*People* v. *Ramirez* (1979) 93 Cal.App.3d 714, 729 [156 Cal.Rptr. 94].)

As written at the time of the enactment of Statutes 1979, chapter 944, section 1170.1, subdivision (d), on the other hand, provided: "When two or more enhancements under Sections 12022, 12022.5, and 12022.7 may be imposed for any single offense, only the greatest enhancement shall apply; however, in cases of robbery, rape or burglary, or attempted robbery, rape or burglary the court may impose both (1) one enhancement for weapons as provided in either Section 12022 or 12022.5 and (2) an enhancement for great bodily injury as provided in Section 12022.7." Under the terms of the subdivision, the only sexual offense for which a defendant's sentence could be enhanced by both use of a firearm and infliction of great bodily injury was rape. Even in that case, only one weapon enhancement could be used. Also, subdivision (a) of section 1170.1 provided for the imposition of only one-third of an enhancement imposed pursuant to section 12022, 12022.5 or 12022.7 when the consecutive offense was a violent felony.

■■ ■■■ ■ The Legislative Counsel forwarded a summary of Senate Bill No. 13 (Stats. 1979, ch. 944 [herein Sen. Bill No. 13]) to the Governor on September 12, 1979.[11] In doing so, the only reference to subdivision (i)

---

[10]Former section 1170.1, subdivision (d) has been renumbered without substantive change and is now contained in section 1170.1, subdivision (e). We will refer to it by its former designation.

[11]We have complied with Evidence Code section 455, subdivision (b) in order to take notice of the Legislative Counsel's communication. Such documents may be used to determine legislative intent. (*People* v. *Tanner* (1979) 24 Cal.3d 514, 520 [156 Cal.Rptr. 450, 596 P.2d 328].)

stated: "Presently, with the exception of rape, robbery or burglary, the court may impose only the greater of the arming or injury enhancements, but not both. Also, in the case of a subordinate term for a violent sex offense and L&L [lewd and lascivious acts upon one under 14 (§ 288)] only one third of the arming or injury enhancement is added to the term.

"Under the bill, there would be no limit to the enhancements that could be imposed on a person convicted of a violent sex offense. Each of them must be served in full."

The summary prepared by the Governor's Legal Affairs Department (Sept. 21, 1979) noted: *"Penal Code Section 1170.1*: provides for the computation of enhancements and subordinate terms. Contains limitations on how much the base terms can be increased.

*"SB 13*: Adds a new section to provide that there is no limitation on the number of enhancements when the offense is for 261(2) or (3); 264.1; 288(b); 289; or 286 or 288a with force, violence, duress, etc. Also provides that the enhancements shall not be merged." It is noteworthy that there was no reference to *Culbreth* or its holding in either document. The references were to section 1170.1 which contained subdivisions (a) and (d).

The Pacific Law Journal, in its review of selected 1979 legislation discussed the bill at 11 Pacific L. J. 432. After noting that prison terms are comprised of base terms and enhancements, it stated: "Limitations exist, however, on the number of enhancement terms that may be imposed.[29] Notwithstanding this provision, Chapter 944 provides that the number of enhancement terms that may be imposed is not limited, regardless of the source of the enhancement for any conviction . . . ." Footnote 29 provides: "*See* CAL. PENAL CODE §1170.1(d)." The editor's reference to section 1170.1, subdivision (d), is consistent with the legislative history that we have been able to find. We have been unable to locate a legislative reference to *Culbreth* in any of the legislative history available to us. We therefore assume that the intent was to modify subdivisions (a) and (d) of section 1170.1, not abrogate *Culbreth*. ■ It should not "be presumed that the legislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication." (*County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 644 [122 P.2d 526]; *Theodor* v. *Superior Court* (1972) 8 Cal.3d 77, 92 [104 Cal.Rptr. 226, 501 P.2d 234].) *Culbreth* is such a long established rule of law, which has survived the Determinate Sentencing Act. (*People* v. *Edwards* (1981) 117 Cal.App.3d 436, 447-448 [172 Cal.Rptr. 652].)

We turn to a review of case law. A conclusion consistent with our holding was reached in *People* v. *Carter* (1983) 144 Cal.App.3d 534 [193 Cal.Rptr. 193]. The defendant was sentenced for attempted murder, three violent sex offenses and kidnaping. After imposing a base term plus a great bodily injury enhancement for the attempted murder, and a subordinate consecutive term for the kidnaping, the court imposed a three-year enhancement for a prior prison term served due to a rape conviction under section 667.5. The court then sentenced the defendant under section 667.6, subdivision (c) for the sexual assaults and as to each enhanced the sentence by five years for the prior rape conviction under section 667.6, subdivision (a).

On appeal, the People argued that language in section 1170.1, subdivision (i) supported punishment under both sections 667.5 and 667.6 because that section provides for enumerated forcible sex offenses "the number of enhancements which may be imposed shall not be limited. . . ." The court rejected this argument with the statement: "The flaw in this reasoning is that this subdivision applies only when the sentence for the sex offenses is being determined under section 1170.1. As noted in *People* v. *Ottombrino, supra,* 127 Cal.App.3d at p. 586 [179 Cal.Rptr. 676], section 667.6, subdivision (c), provides an *alternative* method for punishing these sex offenses, beginning as it does, ' "[i]n lieu of the term provided in 1170.1, a full, separate, and consecutive term may be imposed" ' for each, enumerated sex offense. (Italics added.) If the sentencing court chooses to use the principal term/subordinate term method prescribed under section 1170.1, subdivision (a) for the sex offenses, then *in that case* subdivision (i)'s provision for unlimited enhancements would come into play. This scheme of sentencing, however, is made expressly subject to section 654 by section 1170.1, subdivision (a). In this case the defendant's sex offenses were sentenced pursuant to section 667.6, subdivision (c), *in lieu of* section 1170.1, subdivision (a). The provisions of subdivision (i) of section 1170.1 are therefore inapplicable." (*People* v. *Carter, supra,* 144 Cal.App.3d at pp. 542-543, fn. omitted.)[12]

In *People* v. *Tassell* (1984) 36 Cal.3d 77 [201 Cal.Rptr. 567, 679 P.2d 1], the defendant was convicted of kidnaping (§ 207), rape (§ 261, subds.

---

[12]We recognize the basis of the *Carter* holding, that section 654 precludes imposition of separate "offender" enhancements under sections 667.5, subdivision (a) and 667.6, subdivision (a) for the same prior, is not directly applicable to the situation before us. The rationale of the *Culbreth* "single-occasion rule" was not that section 654 applied to the facts before it, precluding imposition of more than one enhancement under section 12022.5, but rather that the court interpreted the language of the statute to impose only one firearm use enhancement when the circumstances of the offense indicated an "indivisible transaction." *Culbreth* is therefore unaffected by the Supreme Court decision in *People* v. *Perez,* (1979) 23 Cal.3d 545, wherein the court held that section 654 did not preclude imposition of full consecutive sentences for different sex offenses committed upon a single victim on a single occasion and involving one indivisible transaction. We also note that *Perez* was decided in 1979, and the effective date of section 667.6 was January 1, 1980.

(2), (3)) and forcible oral copulation (§ 288a). He was sentenced to the upper term for rape and, under section 667.6, subdivision (c), to a full consecutive term for oral copulation. As to each, enhancements of one year for a prior Florida statutory rape conviction (§ 667.5, subd. (b)) and five years for a prior California rape conviction (§ 667.6, subd. (a)) were added.

The trial court had justified its double use of the priors by reliance on section 1170.1, subdivision (i). However, our Supreme Court reversed this multiple use of prior convictions. It noted that the purpose of subdivision (i) was to nullify limitations on the use of enhancements in other parts of section 1170.1. However, sentencing under section 667.6, subdivision (c) is an alternative to consecutive sentencing under section 1170.1 and it is clear that the Legislature intended that enhancements for prior convictions be added just once. It cited *Carter* with approval.

Against the foregoing analysis and precedent stands *People* v. *Bergman* (1984) 154 Cal.App.3d 30 [201 Cal.Rptr. 54]. We believe that case was wrongly decided. *Bergman* correctly recognized that *as to a sentence imposed pursuant to section 1170.1,* subdivision (i) of that section legislatively "overruled" *In re Culbreth, supra,* 17 Cal.3d 330 and permitted imposition of more than one section 12022.5 enhancement as to multiple weapon uses occurring in connection with the enumerated sex offenses. But it failed to note that where the sentencing court elects to apply the harsher provisions of section 667.6, subdivision (c) *"in lieu of"* section 1170.1, the "exception" to *Culbreth* of section 1170.1, subdivision (i) cannot apply.

*Bergman* did not cite *Carter,* but instead relied on *People* v. *Edwards, supra,* 117 Cal.App.3d 436 and *People* v. *Cardenas, supra,* 31 Cal.3d 897. Neither supports it. Edwards was sentenced for seven counts of robbery. There were two victims in one incident, three in another. As to each, the defendant was sentenced to two one-year enhancements under section 12022.5 for the firearm use findings. The holding was that *Culbreth* retained vitality after the enactment of the Determinate Sentencing Act. Part of the rationale was that since subdivision (h) (now (i)) provided for unlimited enhancements for the listed sex offenses, this indicated a legislative intent to leave the *Culbreth* rule unaltered as to other crimes. *Edwards* did not purport to consider the effect of subdivision (i) on a section 667.6, subdivision (c) sentence.

The *Cardenas* defendant was convicted of attempted murder in the first degree (§§ 664, 187) and attempted robbery (§§ 664, 211). The trial court used the single act of firearm use (§ 12022.5) to enhance his sentences for both crimes. The court held that *Culbreth* prohibited the trial court from adding a firearm use enhancement as to both sentences. It quoted and relied

upon *Edwards* and noted the "one possible exception" to the *Culbreth* rule in subdivision (i). Again, no analysis was made of a sentencing under section 667.6, subdivision (c) rather than under section 1170.1.

We have placed in the margin[13] other cases which have discussed subdivision (i). For the reasons noted there, none of them are inconsistent with our view that when multiple sex offenses are punished pursuant to section 667.6, subdivision (c), the provisions of section 1170.1, subdivision (i) do not apply.

## VI. CONCLUSION

The judgment appealed from is affirmed with the exception of the imposition of more than one section 12022.5 enhancement in reference to the sex crimes, as to which it is reversed. The cause is remanded; the trial court will prepare a new abstract of judgment in which the defendant is sentenced to a single section 12022.5 enhancement for the sex crimes and send a certified copy thereof to the appropriate authorities.

Franson, Acting P. J., concurred.

---

[13]*People* v. *Blevins* (1984) 158 Cal.App.3d 64 [204 Cal.Rptr. 124], *People* v. *Le* (1984) 154 Cal.App.3d 1 [200 Cal.Rptr. 839], and *People* v. *Ottombrino, supra,* 127 Cal.App.3d 574 (disapproved on another point in *People* v. *Belmontes, supra,* 34 Cal.3d 335, 345), all involved enhancements imposed pursuant to section 12022.3, which provides, in part, "[f]or *each violation* of [enumerated sex offenses] . . . any person shall receive an enhancement . . . ." (Italics added.) The language of section 12022.3 provides authority independent of section 1170.1, subdivision (i) to impose an enhancement for each weapon use associated with a series of sex offenses, and is thus a second "exception" to the rule of *Culbreth*. *Blevins, supra,* recognized this when it stated that "[w]hether sentenced under section 1170.1, subdivision (a) or under section 667.6, subdivisions (c) or (d), any person who is armed with or uses a firearm or any other deadly weapon in committing an enumerated sex offense must receive an enhancement for *each* and *every* such offense. The Legislature's considered reference to 'each violation' of the enumerated statutes reflects its intent that section 654 and *Culbreth* should not limit the imposition of weapons enhancements *under section 12022.3.*" (*People* v. *Blevins, supra,* 158 Cal.App.3d at p. 71, fn. omitted, italics added.) *Le* and *Ottombrino,* while incorrectly relying on section 1170.1, subdivision (i), reached the correct result because each permitted multiple enhancements pursuant to section 12022.3. In the present case, the trial court imposed multiple enhancements pursuant to section 12022.5, as to which *Culbreth,* which specifically interpreted that section, is still controlling law.

*People* v. *Calhoun* (1983) 141 Cal.App.3d 117 [190 Cal.Rptr. 115] must also be distinguished, for it involved the imposition of section 12022.5 enhancements at a sentencing under section 667.6, subdivision (d). Subdivision (d), unlike subdivision (c) of section 667.6 does not commence with a provision that it be applied "in lieu" of section 1170.1. *Calhoun* involved sexual offenses against different victims, which was the reason the provisions of section 667.6, subdivision (d) were invoked. The Legislature deemed separate sexual affronts against separate victims as a more grievous wrong than multiple sexual acts against the same victim on the same occasion. It thus made no exclusion of the provision of subdivision (i) of section 1170.1 to section 667.6, subdivision (d) sentencing. The same is true of *People* v. *Bishop* (1984) 158 Cal.App.3d 373 [204 Cal.Rptr. 502].

**HANSON (P. D.), J.**—I concur in the majority opinion, except for Part V, with which I respectfully dissent.

In light of the recent case of *People* v. *Bergman* (1984) 154 Cal.App.3d 30, 34-37 [201 Cal.Rptr. 54], hearing denied by the Supreme Court on June 13, 1984, the majority opinion creates a needless conflict in the law.

In *People* v. *Perez* (1979) 23 Cal.3d 545 [153 Cal.Rptr. 40, 591 P.2d 63], Justice Manuel, in discussing the commission of multiple sexual acts against a single victim, stated: "Assertion of a sole intent and objective to achieve sexual gratification is akin to an assertion of a desire for wealth as the sole intent and objective in committing a series of separate thefts." (*Id.*, at p. 552.) As in *Perez*, here, "[n]one of the sex offenses was committed as a means of committing any other, none facilitated commission of any other" (*id.*, at pp. 553-554) and here, in each offense, a gun was involved. *Perez* defined such "base criminal" sexual attacks as more than an individual transaction, "not incidental to" but each "a separate and distinct act." (*Id.*, at p. 553.)

The basis of *Perez* was to ensure that a defendant's punishment is commensurate with his culpability. This obviously was the intent of the Legislature in enacting section 667.6 of the Penal Code (1979 Stats., ch. 944, § 10). Justice Amerian resolved the issue properly in the *Bergman* case.

Respondent's petition for a hearing by the Supreme Court was denied December 13, 1984. Kaus, J., and Lucas, J., were of the opinion that the petition should be granted.