[No. F004086. Fifth Dist. June 13, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
ABRAHAM MACIEL, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exceptions of parts I through II.

COUNSEL

John K. Cotter, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert D. Marshall and Michael T. Garcia, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BEST, J.**—Defendant, Abraham Maciel, was convicted by jury of multiple crimes, including four violent sex offenses. His contentions on appeal are

(1) the erroneous admission into evidence of his tape-recorded statement, (2) insufficiency of the evidence to support his conviction of the sex offenses, and (3) sentencing error in that the trial court imposed two weapons enhancements pursuant to Penal Code[1] section 12022.3 for the same crime. We will affirm but modify the judgment because of sentencing error.

## THE CASE

Defendant was charged by amended information with nine felony counts as follows: Count I, burglary (§ 459); count II, robbery in an inhabited dwelling (§ 213.5); count III, aiding and abetting a forcible rape (§ 264.1); count IV, forcible rape in concert (§ 264.1); count V, forcible oral copulation (§ 288a, subd. (d)); count VI, sodomy by force (§ 286, subd. (d)); count VII, false imprisonment of Mrs. L. (§ 236); count VIII, false imprisonment of Mr. L. (§ 236); and count IX, attempted extortion (§§ 664, 518 and 664, 520).

Counts I, II, VII and VIII all contained allegations that a principal was armed with a rifle within the meaning of section 12022, subdivision (a), and that defendant personally used a knife within the meaning of section 12022, subdivision (b).

Counts III, IV, V and VI all contained allegations that defendant personally used a knife and was armed with a rifle within the meaning of section 12022.3.

Defendant was found guilty of all counts as charged and the jury found all of the enhancement allegations to be true.

## THE FACTS

Mr. and Mrs. L. went to bed at approximately 9 p.m. on October 14, 1983, and were awakened later by two men standing at the foot of their bed. Mrs. L. testified that one man, defendant, was Mexican and was armed with a knife. The other man, Marty Chapin, was American and was armed with a rifle. Both men had their faces covered. The men ordered Mr. and Mrs. L. to lie down on the floor. They then tied the hands and feet of Mr. L., dragged him to another room and covered his face.

Mrs. L. was tied spread-eagle to the bed. She testified that defendant cut off her robe and underclothes with a knife and then covered her face. One of the men raped her. Mrs. L. testified she believed the first man to rape

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

her was Marty Chapin because he did not speak to her. Mrs. L. does not speak English. During the course of the first rape, defendant, speaking in Spanish, asked her if she "liked the dick" and placed his penis in her hand. After Chapin was through, defendant forced her to orally copulate him. Defendant placed the knife against her neck and, again speaking in Spanish, threatened to kill her if she hurt him. While this was going on, she could hear the other man searching in the other rooms. Defendant then sodomized and raped her, all the while speaking to her in Spanish.

After defendant had finished, he began to search the house. He then asked Mrs. L. where she kept the money, but she told him there was no money. Defendant ordered her to deliver $1,000 to him in Wasco at 8 o'clock the next day. To remind her of the time, he carved an 8 on the wall of the bedroom. The men eventually found $216 in Mrs. L.'s purse. Finally, before running out of the house, someone fired the rifle at the television set.

Defendant had tied a knife to the end of a rope, which he placed in Mrs. L.'s hand. He told her she could cut herself free by pulling on the rope to reach the knife. After the men left, Mrs. L. freed herself and her husband, and they went to a friend's house to call the police. Mrs. L. initially did not tell the police about the oral copulation or the sodomy because only men were present and she was embarrassed. Mrs. L. later went to the hospital for treatment and told the entire story to a policeman at the hospital. The next day, Mrs. L., while at her sister-in-law's house, saw the defendant pass by and wave to her. She called her friend, Lupe Castellano, and asked Mrs. Castellano to tell the police.

Subsequently, defendant was arrested and questioned about the crime by Deputy Taylor of the Kern County Sheriff's Department. The interrogation was taped, and the tape containing admissions was played for the jury at trial.

## THE DEFENSE

Defendant testified that he spent most of the day of October 14, 1983, getting loaded on PCP in a park in Buttonwillow. Later that day, he decided to rob the L. residence for money he was told they possessed. Defendant recruited Marty Chapin to help. Chapin then procured a .22-caliber rifle from someone, and he and defendant drove to the L. residence in defendant's truck. Defendant denies being armed with a knife while there, although he states he was armed with a screwdriver. The men broke open the back door and found Mr. and Mrs. L. in bed asleep. Defendant took Mr. L. to another room, tied him up and covered his face.

Defendant then tied up Mrs. L. He testified he tied her hands together and her feet together. He denies tying her to the bed spread-eagle. All this time, defendant claims he spoke English to Mrs. L., although he does speak Spanish. Defendant left Mrs. L. sitting on the bed and went to the kitchen to look for money. While there, he decided to drink a soda. While defendant was in the kitchen, his companion was searching the rest of the house for money. Defendant testified that Chapin eventually came into the kitchen, discussed the search with defendant and went into the bedroom where Mrs. L. was tied. Defendant denies ever going back into that bedroom. Later, he heard a shot from another room and ran into the room to find that Chapin had fired the rifle into the television. At this point, he could see into the bedroom and noticed that Mrs. L. was not tied up in the same manner as that in which he had originally tied her. Defendant testified he finally convinced Chapin to leave after Chapin had found $16 in Mrs. L.'s purse. Defendant then tied a knife from the kitchen to the end of a rope and placed the rope in Mrs. L.'s hand. He told her to pull the string and she would be able to cut herself loose.

Defendant and Chapin then ran to defendant's truck and drove off. Defendant testified that while they were driving around, Chapin admitted having had sex with Mrs. L. Defendant denied having raped and sodomized Mrs. L. He denied having forced her to orally copulate him. He also denied having knowledge of what Chapin had done in the house and denied helping him sexually assault Mrs. L.

## DISCUSSION

### I*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### III

*The trial court erroneously imposed two weapons enhancements under section 12022.3*

■    The jury found defendant guilty on counts III and IV. Count III charged defendant with aiding and abetting a rape in violation of section 264.1. Count IV charged defendant with personally committing a rape in violation of section 264.1. The jury further found as to each count that defendant personally used a knife within the meaning of section 12022.3

*See footnote, *ante,* page 273.

and that he was armed with a firearm within the meaning of section 12022.3. On the third count, the trial court sentenced defendant to the upper term of nine years and imposed a three-year enhancement for personally using a knife and a two-year enhancement for being armed with a rifle pursuant to section 12022.3. The identical sentence was imposed on the fourth count but was stayed by the trial court. The same three-year and two-year enhancements were imposed but stayed on the fifth and sixth counts. Defendant contends the imposition of two weapons enhancements under section 12022.3 is not authorized by the language of the statute. We agree.

Section 12022.3 was enacted into law in 1979 with several other statutes designed in part to provide harsher treatment for violent sex offenders.[2] Section 12022.3 provides: "For each violation of Section 261, 264.1, 286, 288, 288a or 289, and in addition to the sentence provided, any person shall receive an enhancement (a) of three years if such person uses a firearm or any other deadly weapon in the commission of such violation or (b) of two years if such person is armed with a firearm or any other deadly weapon."

In interpreting this statute, the plain meaning of the language embodied in the statute should control. The language in section 12022.3 authorizes only one weapon enhancement for each sex offense listed in the statute and committed by a defendant. The section provides that for each conviction of the enumerated sex offenses "an" enhancement will be imposed for either the use of a firearm or deadly weapon or for being armed with a firearm or deadly weapon. "[A]n enhancement" certainly indicates a single enhancement is authorized. Similar language in other statutes has been interpreted to authorize only one enhancement. For example, section 667.6, subdivision (a), provides that when a person is convicted of a violent sex offense, and he committed a prior violent sex offense, "a five-year enhancement" shall be imposed for each prior offense. The court in *People* v. *Carter* (1983) 144 Cal.App.3d 534 [193 Cal.Rptr. 193] held this section plainly was limited to a single enhancement for each prior offense. (*Id.,* at p. 544.)

Furthermore, the language of section 12022.3 is disjunctive. The section provides for the imposition of a three-year enhancement for the use of a weapon *or* a two-year enhancement for being armed with a weapon. The word "or" is generally used to indicate an alternative. (See American Heritage Dictionary of the English Language (new college ed. 1981) p. 923.) The language of section 12022.3 plainly indicates that the court may impose a single enhancement to be chosen from the two alternatives listed in the

---

[2]See *Selected 1979 California Legislation,* 11 Pacific L.J. 429. Among the statutes added to the Penal Code were section 667.6, subdivision (c), section 1170.1, subdivision (h), which is presently designated as subdivision (i), and section 12022.3.

statute: the three-year enhancement for use of a weapon or the two-year enhancement for being armed with a weapon.

This would appear to be the result whether a single weapon is involved in the crime or several weapons are involved. If the Legislature had intended a defendant using one weapon and being armed with a different weapon to be treated differently than a defendant using and being armed with the *same* weapon under the statute, then it could have provided so in the statute's language. (See *People* v. *Rodriguez* (1984) 160 Cal.App.3d 207, 213 [206 Cal.Rptr. 563].) Furthermore, if the statute is ambiguous as applied to a defendant utilizing two weapons during a crime, that ambiguity must be decided in favor of the defendant. (*People* v. *King* (1978) 22 Cal.3d 12, 23 [148 Cal.Rptr. 409, 582 P.2d 1000]; *People* v. *Davis* (1981) 29 Cal.3d 814, 828 [176 Cal.Rptr. 521, 633 P.2d 186]; *People* v. *Rodriguez, supra,* 160 Cal.App.3d at p. 213.)

We hold that pursuant to the plain language of section 12022.3, the trial court could have imposed an enhancement either for defendant's personal use of a knife during the crime or for defendant's being armed with a rifle during the crime, but not both.

■ The Attorney General does not address the argument that the language of section 12022.3 authorizes only one enhancement. He relies instead on section 1170.1, subdivision (i), which provides: "For any violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or sodomy or oral copulation by force, violence, duress, menace or threat of great bodily harm as provided in Section 286 or 288a, the number of enhancements which may be imposed shall not be limited, regardless of whether such enhancements are pursuant to this or some other section of law. Each of such enhancements shall be a full and separately served enhancement and shall not be merged with any term or with any other enhancement."

The provisions of section 1170.1, however, are inapplicable to the case at bench. Defendant was given full consecutive sentences on the sex offenses pursuant to section 667.6, subdivision (c). Several recent cases have held that the provisions of section 1170.1, including subdivision (i), do not apply to a defendant sentenced under section 667.6, subdivision (c), since that section provides an entirely distinct sentencing scheme in lieu of the scheme under section 1170.1. (*People* v. *Rodriguez, supra,* 160 Cal.App.3d at p. 212; *People* v. *Carter, supra,* 144 Cal.App.3d at p. 542.) Furthermore, it appears that the purpose of section 1170.1, subdivision (i), was to counter certain other limitations on sentencing included under the scheme of section

1170.1. (*People* v. *Tassell* (1984) 36 Cal.3d 77, 90-91 [201 Cal.Rptr. 567, 679 P.2d 1]; *People* v. *Carter, supra,* 144 Cal.App.3d at p. 542, fn. 9.) In passing section 1170.1, subdivision (i), then, the Legislature apparently did not intend to affect enhancements imposed pursuant to section 12022.3 when a defendant is sentenced under section 667.6, subdivision (c).

The Attorney General also relies on *People* v. *Stiltner* (1982) 132 Cal.App.3d 216 [182 Cal.Rptr. 790] to uphold the imposition of double enhancements. The *Stiltner* court did hold that section 12022.3 allows for two weapon enhancements if two different weapons are involved in the crime. The court reached this result by interpreting section 12022.3 in conjunction with section 1170.1, subdivision (h), which read as subdivision (i) does today. In reconciling the language of section 12022.3 and that of section 1170.1, subdivision (h), the court held a reasonable interpretation was that the Legislature used disjunctive language to indicate only that one of two alternative enhancements may be imposed for a single weapon. The court, however, held that an enhancement is appropriate for each different weapon a defendant uses or is armed with during a sex offense under the provisions of section 12022.3.

In *Stiltner,* defendant was sentenced pursuant to section 1170.1. All the provisions of section 1170.1 presumably applied to defendant's sentence including section 1170.1, subdivision (i). The court, then, was required to construe together section 1170.1, subdivision (i), and section 12022.3. In the present case, the provisions of section 1170.1 are inapplicable. There is no need, then, to reconcile the plain language of section 12022.3 with the language of section 1170.1, subdivision (i). Furthermore, the Attorney General's argument that the result in *Stiltner* was reached because that court "manifestly found two acts which could be punished" is not supported by a reading of *Stiltner.*

■ Finally, assuming that section 1170.1 was to be construed with section 12022.3, the provisions of section 12022.3 would control over conflicting provisions of section 1170.1. Section 1170.1, subdivision (i), is a general statement providing that the number of enhancements shall not be limited for certain enumerated sex offenses. Section 12022.3 deals specifically with weapons enhancements for use of a firearm or deadly weapon or for being armed with a firearm or deadly weapon during the commission of certain sex offenses. Section 12022.3 may be characterized as a specific statute on enhancements; whereas, section 1170.1, subdivision (i), is a general statute. It is an established rule of statutory construction that specific provisions prevail over more general provisions. In this case, then, the specific dictates of section 12022.3, as mandated by the plain language of the statute, should be followed. Furthermore, under section 12022.3, the

imposition of enhancements is unlimited at least to the extent that for each sex offense committed an enhancement either for use of a weapon or for being armed with a weapon may apply. (See *People* v. *Blevins* (1984) 158 Cal.App.3d 64, 71 [204 Cal.Rptr. 124].)

The trial court improperly imposed two weapons enhancements on count III under section 12022.3.

## DISPOSITION

■ Having concluded that the trial court erroneously imposed two weapons enhancements under section 12022.3 with respect to count III, we must determine whether remand for resentencing is compelled. A review of the reporter's transcript of the sentencing hearings leads to the inescapable conclusion that it was the intent of the trial court to impose both of the weapons enhancements pursuant to subdivisions (a) and (b) of section 12022.3. In addition to imposing both enhancements on count III, both enhancements were imposed with respect to count IV, but stayed because of section 654. Both enhancements were imposed with respect to counts V and VI, but stayed without a statement of reasons therefor. One weapon enhancement pursuant to (a) or (b) of section 12022.3 could have been imposed with respect to both count V and count VI. It is inconceivable to us that upon remand a sentence more favorable to defendant would result.

Accordingly, we modify the judgment by striking the two-year enhancement imposed pursuant to subdivision (b) of section 12022.3 with respect to count III and vacate the stay of the same enhancement imposed with respect to count V. As so modified, the judgment is affirmed.

The trial court is directed to prepare an amended abstract of judgment to reflect such modification and to forward copies thereof to the appropriate authorities.

Woolpert, Acting P. J., and Hamlin, J., concurred.