[No. D001809. Fourth Dist., Div. One. Dec. 2, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
ROY DERRICK McELRATH, Defendant and Appellant.

**COUNSEL**

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Jay M. Bloom, Pat Zaharopoulos and Maxine P. Cutler, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**LEWIS, J.**—Roy Derrick McElrath appeals his jury-tried convictions for two counts of forcible rape (Pen. Code,[1] § 261, subd. (2)), forcible sodomy (§ 286, subd. (c)) and forcible oral copulation (§ 288a, subd. (c)). The jury found he inflicted great bodily injury in all the above offenses (§ 12022.8) and McElrath used a deadly weapon during one of the rapes (§ 12022.3, subd. (a)). The jury also convicted McElrath of first degree burglary (§§ 459-460) and robbery in an inhabited house with his personal use of a deadly weapon (§§ 211, 213.5, 12022, subd. (b)). The jury convicted McElrath of attempted murder (§§ 664, 187) and kidnaping (§ 207, subd. (a)) of his victim, all with his personal use of a deadly weapon (§ 12022, subd. (b)). Regarding a separate victim, the jury convicted him of kidnaping and simple assault (§ 240) as a lesser included offense of assault with intent to commit rape or oral copulation. McElrath admitted a violent felony prior conviction (§ 667.5, subd. (a)).

McElrath contends the court improperly considered his motion to substitute appointed counsel and improperly instructed the jury regarding the elements of sodomy. He also contends the following sentencing errors oc-

---

[1]All statutory references are to the Penal Code unless otherwise specified.

curred: (1) the court failed to state its reasons for sentencing under section 667.6, subdivision (c);[2] (2) the court should not have imposed separate prison terms on all four great bodily injury enhancements; and (3) his 67-year 8-month prison term is cruel and unusual punishment. Holding the court failed to instruct on an essential element of sodomy, we reverse McElrath's sodomy conviction and we order the concurrent term on count 5 (burglary) stayed. In all other respects, the judgment is affirmed.

In January 1984, at about 1:30 a.m., McElrath opened Cynthia A.'s dining room window to enter her house. Cynthia, asleep on the living room sofa, awakened and investigated. McElrath told Cynthia, "Let me in. There's been a shooting down the street. Can I use your telephone?" Cynthia was alone in the house with her young son. Her husband was at sea with the Navy. Cynthia refused to let McElrath enter. Instead, she gave him a piece of paper, telling him to write his name and phone number and she would call police for him. McElrath complied, still insisting he needed to enter the house. Worried, Cynthia began telephoning the police. McElrath entered the house and pulled the telephone cord loose. Cynthia ran to the front door, ordered McElrath to leave, and when he refused she began screaming. McElrath struck Cynthia's face with his fist, grabbed her arm and led her to the bedroom. There, McElrath raped, sodomized and orally copulated Cynthia. After about one hour, still bleeding from her facial cuts, Cynthia asked McElrath to let her go into the kitchen for about 15 minutes to apply ice to her wounds. McElrath took her there by the arm and allowed her to apply ice to the cut under her right eye with the result her bleeding was reduced. He then forced her back into the bedroom and raped her again. McElrath had a knife in the bedroom.

McElrath asked Cynthia to show him where she kept her medicines. Finding a bottle of Tylenol in the medicine cabinet, McElrath forced Cynthia to swallow about 60 Tylenol tablets. McElrath forced her to wash down the Tylenol with hydrogen peroxide. Cynthia hesitated, but complied when McElrath told her to take the pills or he would kill her "right then and there."

McElrath demanded Cynthia's car keys and forced her into her car. As McElrath drove toward the street, Cynthia jumped from the car and ran to a neighbor's house. McElrath abandoned the car and fled.

As a result of McElrath's attack, Cynthia had numerous lacerations involving various facial areas, the side of her right eye, her left forehead, the base of her nose and her left arm. Her face and left thigh were bruised. She

---

[2]Hereafter section 667.6(c).

required plastic surgery for her cuts and at the time of trial had four facial scars as well as a tender and bruised leg.

There was overwhelming physical evidence of McElrath's involvement. A vaginal swab taken from Cynthia at the hospital showed the presence of seminal fluid. McElrath's thumbprint was found on a knife recovered in Cynthia's bedroom. There was a "high probability" McElrath wrote the note that Cynthia gave to the intruder. The phone number written on this note corresponds to McElrath's mother's phone number.

On January 14, 1983, McElrath accosted April E. as she was walking from work. McElrath grabbed her arm and led her to a vacant house. April E. escaped.

## I

■ Four days before trial, McElrath sought to discharge his appointed attorney and have the court appoint substitute counsel. McElrath wrote a letter to the court stating his attorney had been lying to him and "had the nerve" to continue the trial without consulting him. McElrath also told the court the thumbprint the People contend was taken from the knife was actually taken from his booking prints. After confirming these grounds for the motion on the record, the court denied McElrath's request, stating, "I have no reason to believe that anything this man has alleged in here is correct, other than his own imagination." McElrath contends the court improperly denied his motion without questioning counsel.

■ The right to substitute appointed counsel is a matter of judicial discretion. (*People* v. *Marsden* (1970) 2 Cal.3d 118, 123 [84 Cal.Rptr. 156, 465 P.2d 44].) To properly exercise this discretion, the court must "inquire on the record into the bases of defendant's complaints." (*People* v. *Hill* (1983) 148 Cal.App.3d 744, 753 [196 Cal.Rptr. 382].) Here, the record shows the court properly inquired into the bases of McElrath's complaints. *Marsden* requires no more.

Neither *Marsden* nor any subsequent Supreme Court decision requires the court to question counsel when a motion to substitute appointed counsel is made. However, appellate decisions require the court to question counsel when an explanation for counsel's attitude or conduct is "necessary" to determine whether counsel can provide adequate representation. (*People* v. *Penrod* (1980) 112 Cal.App.3d 738, 747 [169 Cal.Rptr. 533].)

■ Here, McElrath's complaints about his attorney did not require the court to question counsel. Unlike his counterpart in *People* v. *Groce* (1971)

18 Cal.App.3d 292 [95 Cal.Rptr. 688], McElrath did not show his attorney failed to investigate specified potentially exonerating evidence. To the contrary, McElrath made only the generalized statement he had "proof" the fingerprint on the knife was actually taken from his booking prints. The court was entitled to and did disbelieve McElrath's story. Questioning counsel was not "necessary" to determine whether counsel could provide adequate representation. Accordingly, the court properly denied McElrath's motion without questioning his attorney.

## II

The court gave the following instruction on sodomy: "Sodomy is sexual conduct consisting of contact between the penis of one person and the anus of another person. In order to prove the commission of the crime of sodomy, each of the following elements must be proved: (1) That a person committed an act of sodomy with another person; and (2) That such act was against the will of such other person; and (3) That such act was committed by means of force or fear of immediate and unlawful bodily injury to person." The court did not give, and the parties did not request, CALJIC No. 10.52 which states: "Any sexual penetration, however slight, is sufficient to complete the crime of sodomy. Evidence of emission is not necessary."

Under section 287,[3] penetration is an element of sodomy. (*People* v. *Singh* (1928) 93 Cal.App. 32, 34 [268 P. 958].) McElrath correctly contends the court's failure to instruct on penetration for sodomy requires this conviction be reversed.

Courts must instruct on general principles of law governing the case; a court has a *sua sponte* duty to instruct on the elements of the offense. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913]; *People* v. *Hill* (1983) 141 Cal.App.3d 661, 669 [190 Cal.Rptr. 628].) The failure to instruct on an essential element of the offense is necessarily prejudicial error. (See *People* v. *Garcia* (1984) 36 Cal.3d 539, 549-550 [205 Cal.Rptr. 265, 684 P.2d 826]; *People* v. *Hill, supra,* 141 Cal.App.3d at p. 669.)

Here, the court did not instruct on the essential element of penetration. Instead, the jury was led to believe "contact" was enough.[4] Accordingly, McElrath's conviction of sodomy and the great bodily injury enhancement (§ 12022.8) are reversed.

---

[3]Section 287 states: "Any sexual penetration, however slight, is sufficient to complete the crime of sodomy."

[4]This was particularly prejudicial here because the examining physician found no evidence of trauma to the anal area and no evidence of semen was found on the anal cotton swab. Thus, contrary to the People's contention, penetration was in issue.

## III

The court sentenced McElrath to a total prison term of 67 years and 8 months comprised as follows:

| Conviction | Base | Enhancement | Total |
| --- | --- | --- | --- |
| Rape (count 1) | Upper—8 yrs. | 5 yrs. (§ 12022.8) | 13 |
| Sodomy | Mid—6 yrs. | 5 yrs. | 11 (consecutive) |
| Oral Cop. | Mid—6 yrs. | 5 yrs. | 11 (consecutive) |
| Rape (count 4) | Upper—8 yrs. | 8 yrs. (§§ 12022.3(a), 12022.8) | 16 (consecutive) |
| Attempted Murder | Upper—9 yrs. | 1 yr. (§ 12022(b)) | 10 (consecutive) |
| Burglary | Mid—4 yrs. | 3 yrs. (§ 12022.7) | 7 (concurrent) |
| Robbery | Mid—4 yrs. | 1 yr. | 5 (concurrent) |
| Kidnap | Mid—4 yrs. | 1 yr. | 5 (concurrent) |
| Kidnap (Victim April E.) | 1 yr. 8 mos. (⅓ midterm) | | 1 yr. 8 mos. (consecutive) |
| Assault (Victim—April E.) | 6 mos. county jail | | |
| Serious Felony Prior | | 5 yrs. | 5 (consecutive) |
| | | | 67 yrs., 8 mos. |

Citing section 667.6(c),[5] the court ordered McElrath's sentences for sodomy, oral copulation and rape (count 4) to run fully consecutive to the upper term imposed for rape (count 1). This accounts for 51 years of the total sentence.

The court designated the attempted murder sentence the principal term for counts not sentenced under section 667.6(c). The court ordered the attempted murder sentence to run consecutively to the sentences imposed for the sex crimes.

The court ordered the sentences for burglary, robbery and kidnaping (victim Cynthia) to run concurrently with the above sentences; the one-year

---

[5]Section 667.6(c) states, in part: "In lieu of the term provided in Section 1170.1, a full separate, and consecutive term may be imposed for each violation of subdivision (2) or (3) of Section 261 . . . or of committing sodomy or oral copulation . . . by force . . . whether or not the crimes were committed during a single transaction."

eight-month sentence for kidnap (victim April E.) to run consecutive to the total term; and the six months local custody for simple assault to run concurrent.

Additionally, McElrath admitted a serious felony prior under section 667.6, subdivision (a). Accordingly, the court imposed an additional five-year prison term to run consecutive to the above terms.[6]

## A. *Reasons Justifying Full-term Consecutive Sentencing*

██ McElrath contends the court failed to properly state reasons justifying its imposing full-term consecutive sentences under section 667.6(c).

██ A court may sentence forcible sex offenders convicted of more than one crime consecutively or concurrently. After choosing to sentence consecutively, the court must make the separate and distinct decision whether to impose the consecutive terms under the principal/subordinate scheme of section 1170.1 or under the full and separate terms of section 667.6(c). A decision to sentence under section 667.6(c) is an additional sentence choice requiring a statement of reasons separate from those justifying the decision to sentence consecutively. (*People* v. *Belmontes* (1983) 34 Cal.3d 335, 347 [193 Cal.Rptr. 882, 667 P.2d 686].)

Thus, two factors are crucial: the court must identify the criteria justifying the use of section 667.6(c) and the record must show the court recognized using section 667.6(c) is a separate and additional sentencing choice. (*People* v. *Belmontes, supra,* 34 Cal.3d at p. 348.) ██ Here, the court clearly recognized its using section 667.6(c) was an additional sentencing choice. The court stated: "The court in accordance with the decision of the State Supreme Court in the case of *People* v. *Juan Belmontes,* I understand that once I have decided to sentence the defendant to consecutive terms and have stated my reasons therefor, I must then decide whether the consecutive terms should be under the principal/subordinate scheme of Penal Code Section 1170.1 or under the full and separate term scheme of Section 667.6 subdivision (c)."

In stating the criteria justifying using section 667.6(c), the court generally commented, "I find the defendant to be a more serious sex offender within the meaning of section 667.6(c)." McElrath stops here, asserting the court "made no further attempt to justify its decision" and this general statement is inadequate. However, the record refutes McElrath's contention. Imposing

---

[6]McElrath admitted he was convicted of rape in February 1984 in Cook County, Illinois. McElrath was on parole at the time of the present offenses.

the sodomy term consecutive to the rape term, the court stated, "The term of six years imposed for . . . sodomy . . . is ordered to run fully consecutive under . . . section 667.6(c) *due to the following circumstances:* The crimes involved separate acts of violence . . . and the defendant was on parole." (Italics added.) Similarly, when making the oral copulation term fully consecutive under section 667.6(c), the court stated the full consecutive term was imposed "due to the following circumstances: The crimes involved separate acts of violence and/or threats of violence." Making the term for rape in count 4 fully consecutive to the above counts, the court stated, "The term . . . [is] ordered to run fully consecutive under Penal Code Section 667.6(c) to the terms imposed in Counts one, two, and three for the following reasons: The crimes involved separate acts of violence and/or threats of violence and the defendant was on parole." ■ ■■ ■■ ■■ The court fully complied with *Belmontes*.[7]

## B. *Separate Prison Terms for Each Section 12022.8 Enhancement*

■■ McElrath attacks the court's imposition of a five-year great bodily injury enhancement (§ 12022.8) on *each* of the sex crime sentences. He argues his conduct was a single indivisible criminal transaction and thus only one enhancement may be imposed. (*In re Culbreth* (1976) 17 Cal.3d 330, 333-335 [130 Cal.Rptr. 719, 551 P.2d 23].) The People respond, citing section 1170.1, subdivision (i), which states in part: "For any violation of subdivision (2) or (3) of Section 261 . . . or sodomy or oral copulation by force . . . the number of enhancements which may be imposed shall not be limited, regardless of whether such enhancements are pursuant to this or some other section of law."

The provisions of section 1170.1, including subdivision (i), however, do not apply to a defendant sentenced under section 667.6(c). (*People* v. *Rodriguez* (1984) 160 Cal.App.3d 207, 218 [206 Cal.Rptr. 563].) Section 667.6(c) is expressly made applicable "in lieu of the term provided in Sec-

---

[7]Because McElrath apparently ignores this part of the record, he does not contend the reasons stated are inadequate. Here, the court justifies its use of section 667.6(c), in part, by stating the crimes involved separate acts of violence. Violence is a factor inherent in every multiple forcible sex crime. (See *People* v. *Price* (1984) 151 Cal.App.3d 803, 813 [199 Cal.Rptr. 99].) Factors inherent in a crime do not make the offense distinctly worse than the ordinary and *alone* do not justify sentencing under section 667.6(c). The Legislature intended to reserve the more punitive provisions of section 667.6(c) for the more serious sex offender. (*People* v. *Belmontes, supra,* 34 Cal.3d 335, 348-349.) However, here the court also justified its use of section 667.6(c) by stating McElrath was on parole for a prior rape conviction at the time of the offenses. This factor amply supports the court's decision to impose sentence under section 667.6(c) in lieu of the less lengthy term which could be imposed under section 1170.1. (*People* v. *Karsai* (1982) 131 Cal.App.3d 224, 238 [182 Cal.Rptr. 406].) Moreover, McElrath's attempt to kill his victim shows he is more dangerous than the ordinary forcible sex offender.

tion 1170.1.'' Thus, where, as here, McElrath is sentenced under section 667.6(c), section 1170.1, subdivision (i), is inapplicable. (*People* v. *Maciel* (1985) 169 Cal.App.3d 273, 279 [215 Cal.Rptr. 124].)

Although section 1170.1, subdivision (i), does not support the court's sentencing here, section 12022.8 itself supports the court's imposing a separate consecutive enhancement for each forcible sex crime. Section 12022.8 states, in part: ''Any person who inflicts great bodily injury . . . on any victim in a violation of subdivision (2) or (3) of Section 261 . . . or sodomy or oral copulation by force . . . shall receive a five-year enhancement *for each such violation* in addition to the sentence provided for the felony conviction.'' (Italics added.) ■ The statute's language is clear. Whether sentenced under section 1170.1 or under section 667.6(c), any person who inflicts great bodily injury in committing an enumerated sex offense must receive an enhancement for *each and every* such offense. The Legislature's reference to ''each such violation'' reflects its intent that *Culbreth* should not limit the section 12022.8 enhancement. Recently this court reached a similar conclusion analyzing the essentially indistinguishable language of section 12022.3. (*People* v. *Blevins* (1984) 158 Cal.App.3d 64, 71 [204 Cal.Rptr. 124].) In *Blevins,* the jury found Blevins was armed with and personally used a knife in committing each of four sex offenses on one victim on a single occasion. Blevins had taken the young victim into the woods where, before he engaged in the sex acts, ''[h]e stuck a rag in her mouth, set her on the ground, took off her clothes and displayed a knife telling her if she tried to get away he would cut her.'' (158 Cal.App.3d at p. 67.) This court upheld the knife use enhancements imposed under section 12022.3 on each count of which he was properly convicted, child molesting and forcible oral copulation. In the face of a challenge based on the ''single-occasion'' rule of *In re Culbreth, supra,* 17 Cal.3d 330, 333-335, and *People* v. *Cardenas* (1982) 31 Cal.3d 897, 913-914 [184 Cal.Rptr. 165, 647 P.2d 569], this court reasoned, in part:

''[T]he express language of section 12022.3 reflects a legislative intent to create a sex offense exception to the general rules of section 654 and *Culbreth:* 'For *each* violation of Section 261, 264.1, 286, 288, 288a or 289, and in addition to the sentence provided, any person shall receive an enhancement (a) of three years if such person uses a firearm or any other deadly weapon in the commission of such violation or (b) of two years if such person is armed with a firearm or any other deadly weapon.' (Italics added.)

''We think section 12022.3's language is clear and unambiguous. Whether sentenced under section 1170.1, subdivision (a) or under section 667.6, subdivisions (c) or (d), any person who is armed with or uses a firearm or

any other deadly weapon in committing an enumerated sex offense must receive an enhancement for *each* and *every* such offense. *The Legislature's considered reference to 'each violation' of the enumerated statutes reflects its intent that section 654 and Culbreth should not limit the imposition of* weapons *enhancements* under section 12022.3. [Fn. omitted.] Although unquestionably severe, section 12022.3's provision of unlimited weapons enhancements is consistent with the Penal Code's harsh treatment of certain sex offenders." (*People* v. *Blevins, supra,* 158 Cal.App.3d at p. 71; italics added.)

■ This reasoning applies with equal force to section 12022.8 and the facts of this case. On each of the four violent sex offenses, the jury found McElrath "did inflict great bodily injury upon Cynthia [A.], within the meaning of Penal Code section 12022.8." That is the same finding the jury made in the weapons use context in *Blevins* where the facts, as stated, indicate weapon use only before the offenses were committed. Here, there is strong evidence of great bodily injury of a continuous nature consisting of Cynthia's bleeding throughout the rather protracted ordeal, and the likely permanent consequence of a scarred face and arm. It is apparent that great bodily injury infliction denotes a result more than an act, particularly considering the circumstances of this case. This court is not prepared to conclude that where a victim is struck with such force as to cause bleeding which carries through a series of forcible sex acts and results in plastic surgery for long-lasting scarring, the Legislature did not intend the section 12022.8 enhancement to attach to "each such violation." Obviously, there is a much stronger deterrent effect in enhancing each of several offenses, rather than only one, and that is the apparent purpose of section 12022.8. The court properly sentenced McElrath.

## C. *Cruel and Unusual Punishment*

■ McElrath contends imposing full-term consecutive sentences under section 667.6(c) and multiple section 12022.8 enhancements is cruel and unusual punishment. Here, McElrath's sentence does not shock the conscience or offend fundamental notions of human dignity. (See *In re Lynch* (1972) 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921].) To the contrary, it is quite reasonable considering McElrath was found guilty of several forcible sex crimes and attempting to murder his victim, all the while inflicting great bodily injury. Similar contentions were also found unpersuasive in *People* v. *Reynolds* (1984) 154 Cal.App.3d 796, 815-816 [201 Cal.Rptr. 826], and *People* v. *Karsai, supra,* 131 Cal.App.3d 224, 240-243.)

### D. *Intent to Rape Factual Basis of Burglary Conviction*

Since the court imposed concurrent prison terms for burglary, robbery and kidnaping involving victim Cynthia, we requested supplemental briefing on the question of whether the factual basis for the burglary conviction was an entry with intent to commit sex offense felonies. If so, the concurrent term for the burglary would be barred by section 654. (See *In re McGrew* (1967) 66 Cal.2d 685, 688 [58 Cal.Rptr. 561, 427 P.2d 161]; *People* v. *Ramirez* (1979) 93 Cal.App.3d 714, 728-729 [156 Cal.Rptr. 94].) It appears clear on this record it was the intent to commit sex offenses that formed the factual basis of the burglary conviction. The People point to no other factual basis except to suggest, nonspecifically, "appellant may have had an objective and intent other than rape at the time." We conclude the sentence on the burglary must be stayed pursuant to section 654.

### DISPOSITION

The judgment is reversed as to the sodomy conviction and its section 12022.8 enhancement. The concurrent term imposed on count 5 (burglary) is stayed pending the completion of the terms imposed on the other counts, the stay to become permanent upon the completion of those terms. In all other respects, the judgment is affirmed.

Lovett, J.,* concurred.

**STANIFORTH, Acting P. J.**—I respectfully dissent from part B of the majority's opinion. Section 654 of the Penal Code[1] prohibits more than one punishment for a single act or omission. McElrath's infliction of great bodily injury involved one individual transaction. The majority's affirmation of multiple enhancements for this single act is statutorily and constitutionally infirm.

### I

Section 654 provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution of the same act or omission under any other." The California Supreme Court has held a similar rule applicable to enhancement provisions. (*In re Culbreth* (1976) 17 Cal.3d 330 [130 Cal.Rptr. 719, 551 P.2d 23].)

---

*Assigned by the Chairperson of the Judicial Council.

[1]All statutory references are to the Penal Code unless otherwise specified.

Division Two of this court has also applied the section 654 limitation to enhancement provisions, holding a single infliction of great bodily injury may not enhance each underlying offense committed during the same transaction. (*People* v. *Moringlane* (1982) 127 Cal.App.3d 811 [179 Cal.Rptr. 726].) The court expressly rejected the opposite conclusion in *People* v. *Boerner* (1981) 120 Cal.App.3d 506 [174 Cal.Rptr. 629]. The Third and First Districts followed, also holding section 654 prevents the application of multiple sentencing enhancements for a single act. (*People* v. *Carter* (1983) 144 Cal.App.3d 534 [193 Cal.Rptr. 193]; *People* v. *Hopkins* (1985) 167 Cal.App.3d 110 [212 Cal.Rptr. 888].)

*Culbreth* explained the rationale behind this rule: "'The Attorney General's thesis, invoking three separate firearm penalties for a single occasion of firearm use, is inconsistent with the apparent objective of section 12022.5. A special deterrence against firearm use is its objective. The legislative theory is deterrence, whose power augments with each successive occasion. . . . Thus the statute envisions a single application of deterrent force for each occasion, hopefully to deter gun use on a future occasion. Where, as here, a single judgment imposes sentences for several crimes committed upon a single occasion, only one finding under section 12022.5 is permissible.'" (*Culbreth, supra,* 17 Cal.3d at p. 334, quoting *People* v. *Johnson* (1974) 38 Cal.App.3d 1, 12 [112 Cal.Rptr. 834].) The purpose behind the enhancement statutes is deterrence. The deterrence value *is not* increased by imposing several enhancements for a single act.

## II

Section 1170.1, subdivision (i), passed after *Culbreth,* permits unlimited use of enhancements in connection with specifically enumerated sex crimes. This subsection thus appears to allow the imposition of multiple enhancements for a single act, abrogating the rule in *Culbreth* and section 654. However, as the majority in the instant case correctly points out, the provisions of section 1170.1 do not apply to a defendant sentenced under section 667.6, subdivision (c). The language of the latter section, indicating its provisions are to be applied, "[*i*]*n lieu* of the term provided in Section 1170.1" (italics added), implies the trial court must make a choice between sentencing under section 1170.1 and sentencing under section 667.6, subdivision (c). (*People* v. *Carter, supra,* 144 Cal.App.3d 534.)

The Court of Appeal in *People* v. *Rodriguez* (1984) 160 Cal.App.3d 207, 213 [206 Cal.Rptr. 563], said: "If the decision is to use consecutive sentences under section 1170.1, and enhancements are imposed under subdivision (i) of that section, they are to be full and separately served. This

great range of sentencing choices affords the court the opportunity to make the sentence fit the crime and the criminal.

"Limits are set, however, and if section 667.6, subdivision (c) is used, the full force consecutive terms were deemed punishment enough and the provisions of section 1170.1, subdivision (i) were not made applicable. Had the Legislature wished to make subdivision (i) apply to a section 667.6, subdivision (c) sentencing, all it would have had to do is commence the section with the words 'In lieu of the term provided in section 1170.1, *subdivision (a), . . .*' However, it did not.

"The matter is not ambiguous, but if it were, we would be bound to resolve it in the defendant's favor. [Citations.]" (Fn. omitted.)

The trial court in the present case made an express choice to sentence McElrath under the harsher sentencing provisions of section 667.6, subdivision (c), rather than section 1170.1. Hence, subdivision (i) of section 1170.1, allowing unlimited multiple enhancements, is not applicable to McElrath. Multiple enhancements cannot be imposed for McElrath's single act of inflicting great bodily injury.

Furthermore, "a long-held rule of statutory construction is that 'it is not to be presumed that the legislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication.' " (*People* v. *Edwards* (1981) 117 Cal.App.3d 436 [172 Cal.Rptr. 652], affirmed in *People* v. *Cardenas* (1982) 31 Cal.3d 897 [184 Cal.Rptr. 165, 647 P.2d 569], quoting *County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 644 [122 P.2d 526]; *Theodor* v. *Superior Court* (1972) 8 Cal.3d 77, 92 [104 Cal.Rptr. 226, 501 P.2d 234].) *Culbreth* is still valid law with respect to a defendant sentenced under section 667.6, subdivision (c). (See *People* v. *Cardenas, supra,* 31 Cal.3d 897.)

### III

The majority relies on the language in section 12022.8 to impose four consecutive five-year sentencing enhancements on McElrath. These 20 extra years are imposed for McElrath's infliction of great bodily injury on victim Cynthia in the course of committing four different counts of sexual assault. The trial court admitted McElrath committed only one act of great bodily injury. The majority fails to recognize only one act giving rise to an enhancement occurred.

Great bodily injury was extensively defined by the California Supreme Court in *People* v. *Caudillo* (1978) 21 Cal.3d 562 [146 Cal.Rptr. 859, 580

P.2d 274]. In *Caudillo,* the court recognized the offenses committed against the victim (rape, oral copulation, sodomy) were "of such an outrageous, shocking and despicable nature that the victim suffered extreme humiliation and distress." (*Id.,* at p. 575.) However, the court held forcible rape alone was insufficient to constitute great bodily injury. (*Id.,* at p. 587.) Furthermore, "the pyramiding of the sexual offenses of sodomy and oral copulation upon rape, without more, is insufficient to invoke the enhancement provision." (*Id.,* at p. 587.) The victim's symptoms in *Caudillo* (gagging, vomiting, spitting, bowel evacuations and two superficial lacerations several inches long on the front and back of the neck) were insufficient to constitute great bodily injury. There was no apparent injury, laceration or hematoma to the sexual organs or anus. The victim did not testify to any pain resulting from the sexual acts, and the Supreme Court held the injuries could logically "only be described as constituting transitory and short-lived bodily distress." (*Id.,* at p. 588.)

Section 12022.7 describes great bodily injury as "a significant or substantial physical injury." Before amendment of this section in 1977, the Legislature had attempted to list examples of great bodily injury: "(a) Prolonged loss of consciousness. [¶](b) Severe concussion. [¶](c) Protracted loss of any bodily member or organ. [¶](d) Protracted impairment of function of any bodily member or organ or bone. [¶](e) A wound or wounds requiring extensive suturing. [¶](f) Serious disfigurement. [¶](g) Severe physical pain inflicted by torture."

While McElrath's attack against Cynthia was certainly outrageous and despicable, I do not see four separate instances of great bodily injury. Therefore, I cannot agree that four separate five-year enhancements should have been imposed.

Forcing Cynthia to swallow a bottle of Tylenol, washed down with hydrogen peroxide, is certainly significant and substantial enough to constitute great bodily injury. However, this was the factual basis for finding McElrath guilty of attempted murder and imposing a 10-year sentence for this crime. The trial court has already punished McElrath for this act. Under section 654, the court could not impose a further sentencing enhancement for the same act.

When McElrath first entered Cynthia's apartment, he struck her twice in the face. The first blow knocked her to the ground. These blows resulted in several cuts requiring stitches, and facial scars, requiring plastic surgery. I would agree these blows constituted great bodily injury. Section 12022.7, before amendment, included in its great bodily injury definition "A wound or wounds requiring extensive suturing" and "serious disfigurement."

Scars, particularly scars to the face, certainly reflect a significant and substantial bodily injury. For this reason, I would agree with the trial court's imposition of one 12022.8 five-year sentencing enhancement for great bodily injury committed in violation of one of the enumerated sexual offenses.

However, after these initial blows there is no testimony indicating McElrath continued to inflict great bodily injury to Cynthia. I am not insensitive to the horrible humiliation and degradation a rape victim undergoes in a sexual assault. Certainly, injury occurred, physically, as well as emotionally and psychologically. However, there was no apparent injury, laceration or hematoma to the sexual organs or anus. Cynthia did not testify to any pain resulting from the sexual acts, and after the initial blows, McElrath committed several individual sexual crimes against Cynthia. Without more, these crimes do not constitute great bodily injury. "[P]ersonal repugnance toward these crimes cannot be a legitimate basis for rewriting the statute as it was adopted by the Legislature. It is precisely because emotions are so easily called into play in such situations that extra precaution must be taken so that this court follows the legislative intent and not our own predelictions or beliefs." (*People* v. *Caudillo, supra,* 21 Cal.3d 562, 589, conc. opn. of Chief Justice Bird.)

*Caudillo* holds rape and other sexual crimes, without more, cannot constitute great bodily injury. In the case at bar, besides the shocking sexual assaults against Cynthia, McElrath also struck Cynthia in the face. Because this assault was not punished under any other statute, and because it was so severe that it constituted significant and substantial bodily injury, I would affirm one five-year enhancement under section 12022.8. However, because this single assault was committed in connection with one, individual, criminal transaction, section 654 and the *Culbreth* rule prevents imposition of three more five-year enhancements.

IV

In *In re Culbreth, supra,* 17 Cal.3d 330, referring to sentencing enhancement for use of a deadly weapon, the California Supreme Court held, "if all the charged offenses are incident to one objective and effectively comprise an indivisible transaction, then section 12022.5 may be invoked only once." (*Id.,* at p. 333.) The Fifth District agreed: "As noted earlier, *Culbreth* holds that when there is a single course of conduct resulting in multiple victims, the use enhancement in Section 12022.5 may be invoked only once and not in accordance with the number of victims. That is, the multiplicity of sentences because of the multiplicity of victims does not engender multiplicity of weapon use. The rule applies to multiple offenses committed against a single victim. (*People* v. *Ramirez* (1979) 93 Cal.App.3d 714, 729

. . . .)" (*People* v. *Rodriguez, supra,* 160 Cal.App.3d 207, 214.) The First District explained: "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of this section [654] depends on the intent and objective of the actor; if all offenses were incident to one objective, defendant may be punished for any one of such offenses, but not for more than one. [Citation.]" (*People* v. *Hopkins, supra,* 167 Cal.App.3d 110, 116.) (See also *People* v. *Calhoun* (1983) 141 Cal.App.3d 117 [190 Cal.Rptr. 115].)

The trial court imposed great bodily injury enhancements for four criminal acts committed by McElrath against Cynthia: two counts of rape, one count of sodomy and one count of oral copulation. However, these four acts constituted one criminal transaction or course of conduct. All acts were committed with the intent and objective of inflicting sexual violence on victim Cynthia. All acts involved one victim. They occurred during one period of time. McElrath did not leave and reenter the house in between the criminal acts. He entered the house and then proceeded to commit these acts of sexual violence one after another. The several assaults reflect but one single transaction.

In *People* v. *Blevins* (1984) 158 Cal.App.3d 64 [204 Cal.Rptr. 124], this court held multiple sentencing enhancements may be imposed under section 12022.3 for multiple sex offenses each committed with the use of a firearm or other deadly weapon. That case may be distinguished from the case at bar. McElrath committed only one act of great bodily injury. Punishment for this single act may be imposed only once. In *Blevins, each* sexual crime was committed with the use of a deadly weapon. Therefore, each use of the deadly weapon could be punished with an additional enhancement to the defendant's sentence. Each use of the weapon reflected a new transaction and a new, divisible violation. Blevins, in effect, used the weapon three different times. If McElrath had inflicted great bodily injury on Cynthia before or during each of his sexual assaults, multiple enhancements would obviously be appropriate. It is the fact he only committed one such violation that distinguishes this case from *Blevins.*

*People* v. *Moringlane, supra,* 127 Cal.App.3d 811, is on point. Defendant Moringlane was charged with murder, three counts of assault with intent to murder and conspiracy to commit murder. Enhancements for great bodily injury were imposed for all three of the assault counts even though only one great bodily injury occurred. This district reversed two of the three enhancements, holding "section 654 as interpreted prohibits the imposition of multiple enhancements for the single act of inflicting great bodily injury upon one person." (*Id.,* at p. 817.)

## V

Finally, 20 years' imprisonment for one act of great bodily injury may well constitute cruel and unusual punishment in violation of California Constitution, article I, section 6. The California Supreme Court recognized a punishment "may violate the constitutional prohibition not only if it is inflicted by a cruel and unusual method, but also if it is grossly disproportionate to the offense for which it is imposed." (*People* v. *Dillon* (1983) 34 Cal.3d 441, 478 [194 Cal.Rptr. 390, 668 P.2d 697], fn. omitted, citing *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921].) In *Lynch,* the court identified three "techniques" to assist courts in identifying a punishment so disproportionate that it amounts to a cruel and unusual punishment. The first technique involves examining "the nature of the offense and/ or the offender, with particular regard to the degree of danger both present to society." (*Lynch, supra,* 8 Cal.3d at p. 425.) The second technique is "to compare the challenged penalty with the punishments prescribed in the *same jurisdiction* for *different offenses* which, by the same test, must be deemed more serious." (*Id.,* at p. 426.) The last technique, closely related to the second, is to compare "the challenged penalty with the punishments prescribed for the *same offense* in *other jurisdictions* having an identical or similar constitutional provision." (*Id.,* at p. 427.)

Applying the techniques to the case at bar, a compelling argument can be made that 20 years is cruel and unusual punishment for the offense committed. Admittedly, the nature of the offense and/or offender in the case at bar do not weigh in favor of a lesser sentence for McElrath. Indeed, the circumstances mentioned in *Lynch* (offender's lack of danger to society, the nonviolent nature of the offense, the absence of a victim, the absence of aggravating circumstances) all weigh against McElrath.

However, turning to the second technique, if McElrath's great bodily injury had been charged directly as a criminal violation instead of as an enhancing circumstance, he would have received one-fifth the number of years in prison. The maximum imprisonment for a battery resulting in serious bodily injury is four years. (§ 243, subd. (d).) The maximum penalty for an assault and battery with a deadly weapon or by force likely to produce great bodily injury is also four years. (§ 245, subd. (a).) Twenty years' enhancement for these same crimes is clearly excessive punishment.

Furthermore, the crime of mayhem, which deprives a victim of a body part or which disables, disfigures or renders such a body part useless, holds a maximum imprisonment of six years. (§§ 203, 204.) Finally, it is significant the attempted murder charge against McElrath, for the forced ingestion of Tylenol and hydrogen peroxide, resulted in the upper term of nine years

in prison. These offenses, resulting in injuries more serious than the injury inflicted by McElrath's two blows, would receive penalties less than half as severe as the 20-year imprisonment sentence imposed upon McElrath.

This sentence is so grossly disproportionate to the offense for which it is imposed that it amounts to a cruel and unusual punishment. I would reverse the great bodily injury enhancements under section 12022.8 except for the single five-year enhancement. In all other respects, I concur with the majority.

The petitions of both parties for review by the Supreme Court were denied February 20, 1986. Broussard, J., and Reynoso, J., were of the opinion that the petitions should be granted.